FREED FURNITURE & CARPET COMPANY, a
Corporation, Respondent, v. P. A. SORENSEN,
Appellant.

No. 1589.    (79 Pac. 564.)

1. **Conditional Sale: Construction of Contract: Note.**
   A contract note for a specified amount, providing for its pay-
   ment in certain weekly installments, was given for the price
   of personal property described therein, reserved the title
   to the property in the seller until fully paid for, authorized
   the seller in case of default to take possession of the 'prop-
   erty and indorse the value thereof on the note, or resell the
   same, and indorse the proceeds on the note, and in either
   case to charge the balance due thereon to the maker. *Held*
   to constitute a conditional sale, which is valid not only be-
   tween the parties thereto but, in the absence of fraud, as
   to third parties, and, though not recorded, to give the seller
   a right to the possession of the property on default of pay-
   ment superior to a lien of a mortgage made by the pur-
   chaser.[1]

2. **Same: Renewal Note: Effect.**
   The fact that the parties to a conditional sale note determined
   and adjusted their accounts a new note being given for the
   balance due, but containing the same reservation of title
   and provisions for enforcement, does not render the trans-
   action an absolute sale with security for the debt.

3. **Same: Costs: Apportionment: Discretion.**
   Revised Statutes 1898, section 3339, authorizes costs to the pre-
   vailing party in an action, among others, for the recovery
   of personal property  Section 3341 gives the court discre-
   tion to apportion costs in all actions other than those men-
   tioned in section 3339.  *Held,* in an action for personal prop-
   erty, that, though plaintiff recovered a portion only of the

---

[1] Russell v. Harkness, 4 Utah 197, 7 Pac. 865, affirmed 118 U. S.,
663, 7 Sup. Ct. 51, 30 L. Ed. 285; Sho'-honetz v. Campbell, 7 Utah 46,
24 Pac. 672; Hirsch & Co. v. Steele, 10 Utah 18, 36 Pac. 49; Machine
Works v. Parsons, 10 Utah 105, 57 Pac. 244; Lippencott v. Rich, 19
Utah 140, 56 Pac. 806; Id., 22 Utah 196, 61 Pac. 526; Detroit Heating
Co. v. Stevens, 16 Utah 177, 52 Pac. 379; Laundry v. Dole, 22 Utah
311, 61 Pac. 1103.

property sued for, the court is not authorized to apportion the costs, but should allow costs as matter of course to the prevailing party.[2]

**4. Same: Harmless Error.**

Though plaintiff recovered only a portion of the personal property sued for, it is not reversible error to direct each party to pay his own costs, where it appears that defendant was not prejudiced by such direction.

(Decided February 6, 1905.)

Appeal from the Third District Court, Salt Lake County.—*Hon. T. D. Lewis,* Judge.

Action to recover the possession of certain chattels or their value. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

*S. P. Armstrong, Esq.,* for appellant.

All of said contracts contain provisions authorizing plaintiff, under certain conditions, to declare the note due and payable at once, and to take possession of, and sell the property, "and from the proceeds of such sale pay the balance then due on said note, together with all costs for the taking and selling of said property, holding the residue, if any there shall be, subject to the disposal of the maker hereof."

This provision, which requires the vendor on retaking to sell the property, and to account for any surplus to the vendee which may be left after satisfying the note, renders the transaction a sale with mortgage back as security for the purchase price. In short, it is a controlling feature in determining the contract to be a purchase-money mortgage, and not a conditional sale. Shaub v. Screven, 19 S. Car. 446-7; Palmer v. Howard,

---

[2] Miller v. Zeigler, 3 Utah 17, 5 Pac. 518; Dudley v. Facer, 8 Utah 403, 32 Pac. 668.

72 Cal. 296, 1 Am. St. 60; Herryford v. Davis, 102 U. S. 235, 246; Russell v. Harkness, 4 Utah 202.

If plaintiff retakes the property it must sell it; it could not simply take it and hold it as owner. If plaintiff were the actual owner, why not? This provision is inconsistent with the theory that plaintiff is the owner. As the court says in Palmer v. Howard, 72 Cal. 296: "Moreover, Palmer and Rey were bound to resell the property if they repossessed themselves of it. They could not have kept it as an owner; and not only so, but they were bound to resell for the benefit of the St. Clairs. This provision is, that if they retake they shall sell 'to the best advantage, rendering to said borrower all surplus, if any, after paying the price agreed upon and the expenses of removal and sale.' This is not a feature of an executory contract of sale. It is the chief characteristic of a mortgage, and is the very sum and substance of proceedings for foreclosure."

Another controlling feature which determines the contract to be a mortgage, is the fact that the vendee is bound to pay the full purchase price, without any option of turning the property back and thus being relieved from further payment. Andrews v. Bank, 20 Colo. 313; Herryford v. Davis, 102 U. S. 235, 246; Hart v. Barney, 7 Fed. 552-3; Palmer v. Howard, 72 Cal. 296; Aultman v. Silha, 85 Wis. 359,

The language of the instrument; "this day sold," is significant. These words show a contract of sale, not to sell. It is not that the vendor will sell, but has sold. "Its meaning is, therefore, that of a sale with retention of the legal title as security for the purchase money." Beardsley v. Beardsley, 138 U. S. 265-7.

The renewal contract which superseded the original contracts was a mortgage, not a conditional sale. If there could be any room for doubt about the nature of this transaction, it should be resolved in favor of the theory of a mortgage. Turner v. Kerr, 44 Mo. 431-2; Aultman v. Silha, 85 Wis. 359.

The rule permitting these secret liens "is at best

a harsh one, and should not be enforced except in cases where the agreement to so hold the title is positive and unambiguous." Edwards v. Simonds, 65 Mich. 355; Palmer v. Howard, 72 Cal. 295; Knittel v. Cushing (Tex.), 44 Am. R. 600; Greer v. Church (Ky.), 13 Bush 434-5.

However disguised, a transaction which is in substance a mortgage will be treated as a mortgage and within the chattel mortgage Act, as to parties dealing with the debtor. Damm v. Mason, 98 Mich. 244; Barney v. Hart (Ky.), 1 S. W. 416; Perkins v. Bank, 43 S. Car. 44; Note, 1 Am. St. 63.

"Conditional sales are not favored in law, and where it is doubtful from the face of the instrument whether the contract is a conditional sale or a mortgage, the courts generally treat it as a mortgage, for the reason that such construction will be most apt to attain the ends of justice, and prevent fraud and oppression." Singer v. Smith, 40 S. Car. 531.

Each party is entitled to tax costs.

Where part of the property, in replevin, is given to plaintiff and a part to defendant, each party is entitled to his costs; not as the judgment was given in this case, that each party pay his own costs. Deshler v. Gwillim, 23 Kan. 313-6; Powell v. Hinsdale, 5 Mass. 343; Seymore v. Billings, 12 Wend. 289; McLaren v. Thompson, 40 Me. 287; Brown v. Smith, 1 N. H. 38-9; Lanyon v. Woodard, 65 Wis. 549; Clark v. Keith, 9 Ohio 74; Knowles v. Pierce, 5 Houst. 184; Wright v. Mathews (Ind.), 2 Blackf. 189; Poor v. Woodburn, 25 Vt. 239.

*Messrs. Booth, Lee & Ritchie* for respondents.

The contracts are conditional sale notes and not mortgages. The appellant cites and relies upon the case of Palmer v. Howard, 72 Cal. 293-6, for a reversal of the decision of the trial court. The above case was a very poorly considered case, and the Supreme Court of California has overruled it. Rodgers v. Bachman,

109 Cal. 552; Van Allen v. Francis, 123 Cal. 474; Perkins v. Mettler, 126 Cal. 100; Harkness v. Russell, 118 N. S. 663.

"A sale conditional upon the full payment of the purchase price before title can be transferred to personal property, is valid against third parties who subsequently purchased the property without notice." Shoshonetz v. Campbell, 7 Utah 46; Lippencott v. Rich, 19 Utah 140, 22 Utah 196; Machine Works v. Parsons, 10 Utah 105; Hirsch v. Steel, 10 Utah 19; Laundry v. Dale, 22 Utah 320.

The renewal contract is a conditional sale and not a mortgage. "It has been seen that, to constitute a common law mortgage, title must pass from the debtor to the creditor. There can be no common law mortgage without something conveyed by the mortgagor to the mortgagee. This feature is obviously lacking in a case where property is sold, and the seller retains the title to secure the payment of the price. Such transaction is not a mortgage but a conditional sale." Hammon on Chattel Mortgages, sec. 4, pp. 9, 10. The above author cites numerous cases to support the text above quoted.

### STATEMENT OF FACTS.

This action was brought in the district court for Salt Lake county by the Freed Furniture & Carpet Company, respondent, against P. A. Sorensen, appellant, for the possession of certain chattels, or their value. A jury having been waived, the court found the facts and rendered judgment for respondent for a recovery of part of the chattles and judgment for appellant for part. Appellant appeals from the portion of the judgment for respondent. Respondent and appellant were both engaged in the furniture business in Salt Lake City, and both at different times sold to one C. C. Fairchild a lot of household goods and furnishings. Among the facts the court found: That on January 11, 1901, the respondent delivered to said Fairchild a part of the chattels described in the complaint, upon the following terms and conditions:

"$280.00.    Salt Lake City, Utah, January 11, 1901. For value received I, the subscriber residing at No. ———Commercial Street, in Salt Lake City, Utah, promise to pay to the Freed Furniture & Carpet Company, or order the sum of two hundred and eighty dollars, payable in installments, as follows: The first payment of fifty dollars on the 12th day of January, 1901, and thereafter ten dollars on the———day of each succeeding week, till the amount of this note is paid in full, payable at the office of the Freed Furniture & Carpet Co., in Salt Lake City, Utah, with interest at the rate of one per cent per month after maturity, both before and after judgment, until fully paid. This note is given for the following described personal property this day sold to the maker hereof by the Freed Furniture & Carpet Co., to-wit: [Here follows a description of the property.] and it is fully understood and agreed that the ownership, title and right of possession of the said property above mentioned, and for which this note is given, shall not pass from the said Freed Furniture and Carpet Company until this note is paid in full, and that should the maker hereof, at any time before this note is paid in full, attempt to sell or otherwise dispose of said property, or to remove the same from the premises above noted as the residence of said maker, without the written consent of the holder of this note, or in case of default of any of the payments as above mentioned, then and in either case, the holder of this note shall have the right to declare this note due, and it shall then be lawful for the Freed Furniture & Carpet Co., or its agents, to take immediate possession of said property wherever found, and to sell the same at public or private sale, and without notice to the maker, and from the proceeds of such sale pay the balance then due on said note, together with all the costs for the taking and selling of said property, holding the residue, if any there shall be, subject to the disposal of the maker thereof. C. C. Fairchild."

On February 25, 1901, and on June 24, 1901, respondent delivered to said Fairchild a part of the goods and chattels described in the complaint, and on the day last named they adjusted and determined the amount then due, including the goods last sold, and a new note was executed, conditioned as above, in which were specified all the goods delivered by virtue of the prior agreements, as well as some goods which the said Fairchild had, previously to the making of any of the said agreements, bought from respondent, and fully paid for. On July 1, July 16, August 31, and November 14, 1901, respondent again delivered to said Fairchild goods, each time taking like notes therefor. On December 10, 1901, they again determined and adjusted the amount due, when a new note was executed as above for the sum of $1,897, payable in installments, in which was specified all the goods and chattels mentioned in the prior agreements, including those previously bought and paid for as aforesaid. On May 5, 1902, respondent again delivered to said Fairchild goods upon the same terms. Then on November 17, 1902, respondent and Fairchild again adjusted and determined the amount due upon the agreements of December 10, 1901, and May 5, 1902, when the following note was made.

"$1,772.20.    Salt Lake City, Utah, Nov. 17, 1902. For value received I, the undersigned, residing at No. 48 Commercial Street, in Salt Lake City, Utah, promise to pay to the Freed Furniture & Carpet Co., or order, the sum of seventeen hundred and seventy-two 20-100 dollars, payable in installments as follows: The first payment of twenty-five dollars on the 17th day of November, 1902, and thereafter twenty-five dollars on the ———day of each succeeding week until the amount of this note is paid in full, payable at the office of the Freed Furniture & Carpet Co. in Salt Lake City, Utah, with interest at the rate of one per cent per month from date, both before and after judgment, until fully paid, and agree to pay a reasonable attorney's fee and all costs that may be incurred in any action or proceeding

instituted for the collection of this note or the enforcement of this contract. This contract note is given for the following described personal property, to-wit: [Here follows description of property.] The express condition of this transaction is such that the title to, ownership and right of possession of all of said property above described shall remain in and not pass from said Freed Furniture & Carpet Co., until this note and all the installments thereof and interest thereon have been paid in full; and should the maker hereof at any time before this note is paid in full, attempt to sell or otherwise dispose of said property, or to remove the same from the premises above named and described as the residence of the said maker, without the written consent of the said Freed Furniture & Carpet Co., or in case of default in making any of the payments above mentioned, or any interest thereon, or in case at any time the Freed Furniture & Carpet Co. shall deem itself insecure even before maturity of this note, the Freed Furniture & Carpet Co. shall have the right to declare this note due and payable at once, and the said Freed Furniture & Carpet Co., or its agents, in such case has full power to take possession of said property wherever found. In case said property above described, or any part thereof, shall be so taken by said Freed Furniture & Carpet Co. it may, for the purpose of ascertaining the then value thereof, sell the same at public or private sale without notice; or may without sale endorse the then true value of said property, or the portion thereof taken, on this note; and the undersigned in either case, agrees to pay on the note any balance due thereon, after such endorsement, as damages for the use of the property hereinabove described.     C. C. Fairchild.''

This last agreement contained all the goods mentioned and described in the previous agreements (except a few) and also included the said goods which Fairchild had previously to the said agreement bought and paid for in full. Only partial payments had been made on the said notes or agreements. The

court also found when the said new notes were made respondent did not surrender any of the said original notes. Said notes or agreements were not recorded. On August 25, 1902, the said Fairchild executed to appellant, Sorensen, a chattel mortgage on all of the said goods and chattels mentioned and described in the aforesaid agreements, together with other personal property of the said Fairchild, to secure the payment of an indebtedness of $2,000 owing from the said Fairchild for goods sold, which mortgage was recorded. And on January 7, 1903, the said Fairchild executed to appellant, Sorensen, two other chattel mortgages upon all the said goods— one to secure the payment of $2,000, being the same indebtedness mentioned in the mortgage above; and another to secure the payment of an indebtedness of $738, also for the purchase price of goods sold and delivered by appellant to the said Fairchild. These mortgages were also recorded. On June 18, 1903, in default of payments, appellant, by virtue of his said mortgages, took possession of all of the said goods therein described, and caused the same to be sold at public auction, and purchased them at such sale. Respondent's action was for recovery of all the goods specified in his said notes, and which were delivered by him to Fairchild. The trial court concluded that respondent was entitled to recover all the said goods except those which the said Fairchild had, previously to the making of the first note, bought and fully paid for, and judgment was therefore rendered accordingly. It appears without conflict that the goods so fully paid for were included in said renewal notes through mistake.

The case having been stated as above, STRAUP, J., delivered the opinion of the court.

The correctness of the court's ruling must depend upon whether the note or agreement of January 11, 1901, and those subsequent thereto (except the one of November 17, 1902) are conditional sale contracts, or

whether they are absolute sales, with mortgage back for the purchase price; for the law is firmly established in this court that conditional sale contracts are valid, not only as between the parties to the contract, but also, in the absence of fraud, as to third parties, and do not fall within the chattel mortgage act. Russell v. Harkness, 4 Utah 197, 7 Pac. 865, affirmed 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285; Shoshonetz v. Campbell, 7 Utah 46, 24 Pac. 672; Hirsch & Co. v. Steele, 10 Utah 18, 36 Pac. 49; Machine Works v. Parsons, 10 Utah 105, 37 Pac. 244; Lippincott v. Rich, 19 Utah 140, 56 Pac. 806; Id., 22 Utah 196, 61 Pac. 526; Detroit Heating Co. v. Stevens, 16 Utah 177, 52 Pac. 379; Laundry v. Dole, 22 Utah 311, 61 Pac. 1103. It is conceded by appellant that under these authorities the contract of November 17, 1902, is a conditional sale contract. But he urges before that contract was made he obtained and had recorded a chattel mortgage on the property, and that his rights thereby became fixed before the making of it. The important inquiry therefore is whether the prior contracts, worded and conditioned as in the one of January 11th, and which were made at the time of the delivery of the goods, are conditional sales or absolute sales with mortgage back.

Appellant with much force says they are, in effect, mere chattel mortgages, which, to be valid as against third parties must be executed and recorded as required by the chattel mortgage act. This is claimed principally because the vendee to the contracts unconditionally promised and obligated himself to pay the full purchase price, and because of the stipulation in the contracts permitting the vendor, in default of payment, to take possession of the goods, sell them, apply the proceeds in payment of the balance due, and "holding the residue, if any there shall be, subject to disposal" of the vendee. It is claimed that these provisions so clearly evidence an intention of an absolute sale and passing of title, with mortgage back, that it is incompatible with the other stipulations in the contract of

retaining title, ownership, and right of possession of the goods in the vendor until fully paid. In support of these views he principally cites and relies upon Andrews v. Bank, 20 Colo. 316, 36 Pac. 902, 46 Am. St. Rep. 291; Herryford v. Davis, 102 U. S. 235, 26 L. Ed. 160; Palmer v. Howard, 72 Cal. 293, 13 Pac. 858, 1 Am. St. Rep. 60; Hart v. Barney, etc., Co. (C. C.), 7 Fed. 552; and Straub v. Screven, 19 S. C. 446. It is well to observe that the determination whether a sale is absolute or conditional depends primarily upon the intention of the parties, to be gathered from all the terms of the contract, the circumstances attending the transaction, and the conduct of the parties. This is to be determined not from any one or several stipulations in the contract disconnected from all others, and so construed as to render other portions of the contract nugatory, but it is to be determined by ascertaining the ruling intention of the parties, gathered from all the language they have used, and from a consideration of the whole contract, and, if possible, to give it such construction as will harmonize and give effect to all of its provisions. In the case of Andrews v. Bank it seems it was considered that an optional payment by the vendee of the purchase price is essential to constitute a conditional sale; and, where the purchaser has promised in unconditional terms to pay, it will render the transaction an absolute sale. This feature of a like contract was also considered in Herryford v. Davis, and some importance attached to it. But we think this court is committed to a different doctrine. Detroit Heating Co. v. Stevens, 16 Utah 178, 52 Pac. 379; Machine Works v. Parsons, 10 Utah 105, 37 Pac. 244; Lippincott v. Rich, 19 Utah, 140, 56 Pac. 806; Laundry v. Dole, 22 Utah 311, 61 Pac. 1103. In these cases the promise to pay was absolute, and in Machine Works v. Parsons it also provided that the vendee "shall be liable for any balance" after applying the proceeds of sale upon the indebtedness. This holding is, we think, in line with the great weight of authority. Certainly the Supreme Court of the United States

in Russell v. Harkness, where the promise to pay in the contract was absolute, by necessary implication also so held. The Supreme Court of California, in considering this feature of a conditional sale contract, observed: "It never has been held to be a determinative charac-. teristic, and it cannot be so held without undoing all the law upon the question. There can be no sale at all without an agreement, express or implied, to pay. Lacking such a promise, the contract is a mere option. If the circumstance that the purchaser's promise to pay was absolute, made the contract an absolute sale, the determination of the nature of such contracts would be so simple a matter as to have rendered entirely superfluous the vast amount of legal research and acumen that have been displayed by all the courts of this country and England in construing them. In truth the purchaser's promise is usually an absolute promise." Van Allen v. Francis et al., 123 Cal. 474, 56 Pac. 339, citing cases. We therefore hold that the absolute promise of the vendee to pay did not render the contract inconsistent with an intention of a conditional sale.

A more difficult proposition is presented by the stipulation in the contract requiring the vendor, in case of recaption and sale, and after applying the proceeds on the balance due on the note, to hold "the residue, if any there shall be, subject to the disposal" of the vendee. Considering the stipulation by itself, there is much force in the argument that it is characteristic of a chattel mortgage, and substantive of foreclosure proceedings. In Palmer v. Howard it seems such a provision was considered a strong and characteristic feature of a chattel mortgage. But from a consideration of the late California cases we are inclined to the view that the effect of Palmer v. Howard has been weakened, if not modified. In Rodgers v. Bachman, 109 Cal. 552, 42 Pac. 448, the court was again considering a like contract, and while, in some particulars, it differed from that in Palmer v. Howard, yet in the particular feature

upon which the court in the latter case laid so much stress characterizing it a mortgage it was the same. In this particular the contract in Rogers v. Bachman provided, "If any moneys be left, then the same is to be paid to the said second parties" (vendees). Still the contract was held to be a conditional sale. And in Perkins v. Mettler, 126 Cal. 100, 58 Pac. 384, the court also says: "In the case last cited [Rodgers v. Bachman] the contract held therein to be a conditional sale was similar in its terms to the contract herein considered. It contained the clause for a resale of the property on condition broken, and a return to the vendee of any amount obtained on such sale in excess of the amount due the vendor under the original contract of sale. . . . The court, in Palmer v. Howard, based the conclusion that the intention was to vest the substantial ownership in the vendee upon the clause in the contract providing for a resale on condition broken, and a return to the vendee of any surplus obtained on such resale; but the latter case of Rogers v. Bachman, supra, is an authority to the effect that such a stipulation is not absolutely determinative of the character of the contract." In Herryford v. Davis, supra, this feature of yielding over the suplus to the vendee was also pointed out, but it was not the controlling factor in reaching the decision holding the contract in that case an absolute sale. In the later case of Harkness v. Russell, where the contract was held to be a conditional sale and differing from the former contract in the particular, among others, that it contained no yielding over surplus clause, the court did not consider such fact a sufficiently distinguishing factor even to make any specific mention of it. The two cases were not distinguished because of this feature. We may therefore assume that, had such fact been thought a controlling, or even a prominent, factor in the contract, it would have been pointed out and mentioned as a distinguishing feature. While some of the cases cited by appellant have considered a yielding over surplus clause in such contracts characteristic

of a chattel mortgage, yet none, except it be Palmer v. Howard, has considered it a controlling or determinative feature.   It will be observed that the contract here under consideration is very like the one in Harkness v. Russell, except here the residue, if any, is to be held subject to the disposal of the vendee; and there the true value of the property, with or without sale, was to be indorsed upon the note, and the vendees agreed to pay any balance due thereon.   In all other particulars the contracts, in substance, are the same. Now, while it may be said the paying over of the surplus to the vendee is consistent with and indicative of title in him, and in the other instance the obligation of the vendee to pay any balance due on the note is consistent with title in the vendor (which, however, may equally well be questioned), yet this difference, which is one only in legal effect, cannot, in this instance, when considered in connection with the whole contract, outweigh and overcome the other unmistakable terms and earmarks of a conditional sale.   A conditional sale, in short, is a sale in which the transfer of title to the thing sold to the purchaser, or his retention of it, is made to depend upon the performance of some condition.   Sales of personal property on condition that title is not to vest in the purchaser until the payment of the purchase-money, or upon some other condition, are of very frequent occurrence. These elements are of the very groundwork of a conditional sale.   The contract before us is evidence of such a sale. It contains express stipulations in clear and unambiguous terms that the ownership, title, and right of possession of the property shall not pass from respondent until the note is paid in full.   Of course, if the real transaction, as gathered from the whole contract and from all the attending circumstances, disclosed the fact that the parties merely secured an indebtedness, and such was the ruling intention, then the mere form of the instrument, or the name the parties may have given it, is not to stand in the way of giving effect to such rul-

ing intention. But we find from the authorities that in determining this ruling intention as to whether the parties intended an absolute or conditional sale, much importance is attached to the stipulation in the contract retaining title until performance of condition, the very essence of a conditional sale. Perkins v. Mettler, supra. In a contract of like kind, also providing for the payment of the balance to the vendee, and it being urged upon this and other grounds that the contract was but a chattel mortgage, the court said: "By the express terms of this agreement the title—that is, the general ownership—was to remain in the vendor until all the terms and conditions on the part of the vendee had been kept and performed. Having thus expressed themselves unambiguously, we can see no reason why this court should strain after reasons for thwarting their obvious purpose." Wilson v. Lewis, 63 Neb. 617, 88 N. W. 690. Again: "The express agreement is that the vendee shall not acquire title until he has paid for the property in full, and this provision is not affected by another, in which it is agreed that he shall have any surplus which may arise in case of a sale by the vendor. This clause in the contracts is not inconsistent with the express agreement that title and right of possession shall remain in the vendor until the vendee shall have complied with the terms therein contained. . . . It is of no more or greater significance, when ascertaining the legal effect of the instruments, than is the other clause, in which the vendee agrees to pay any deficiency which may arise in case of a sale." Keystone Mfg. Co. v. Cassellius, 74 Minn. 115, 76 N. W. 1028.

The contract in the case of Harkness v. Russell, held to be a conditional sale, also contained a stipulation requiring the vendee to pay any deficiency after recaption and sale of the property. The Minnesota case just cited is an authority to the effect that the yielding over of the surplus to the vendee is of no greater significance when ascertaining the legal effect of the instrument,

than is the clause wherein the vendee agrees to pay any deficiency which may arise in case of sale. And in American Harrow Co. v. Deyo (Mich.), 96 N. W. 1055, it was also held that the stipulation to pay the deficiency after applying the proceeds of sale on the indebtedness was not inconsistent with the one of title remaining in the vendor until payment of the purchase price. Again, it was said: ''Both reason and authority tell us that there is nothing inconsistent in the provisions which declare that the title to the property shall remain with the vendor until payment has been made: and in case the vendor, for breach of contract, shall retake the property, he shall sell it, pay himself the balance of the debt, and pay over the balance of the proceeds to the vendee.'' The court then proceeds upon the theory that such clause was placed in the contract to guard against possible forfeitures of payments made, and ''to create in favor of the purchaser a possible compensating advantage in the final disposition of the proceeds of the property. But this advantage was viewed by the contracting parties as springing not from the fact that the purchaser was the holder of the title to the property, but as an offset to the harsh enforcement of the contract in possibly forfeiting all payments, and in a possible retention of the property without accounting for its value.'' Herbert v. Rhodes-Burford Furniture Co., 106 Ill. App. 583. From some of the authorities it appears, and probably the prevailing doctrine is, on condition broken and recaption of property sold conditionally all payments made by the vendee are deemed forfeited, unless otherwise contracted. Other courts, acting on equitable principles, require the vendor who rescinds the contract for default after receiving partial payments of the price to refund the sum already paid, after deducting a reasonable compensation for the use of or damage to the property. It is not so much here whether the parties have stipulated in exact accordance with or contrary to these rules. But it is apparent to us, and we so conclude that by the latter

portion of the contract including the so-called surplus clause, the parties were not thereby stipulating concerning the passing or vesting of title, but thereby were stipulating and bargaining concerning the "compensating advantage" of the vendee in case of breach of condition and recaption of the property by the vendor, and to guard against the harsh rule of possible forfeitures if such should be held to be the true doctrine. So construing this portion of the contract, all of its provisions can be harmonized and be given effect. To construe it as is contended by appellant renders nugatory the provision providing for retention of title in the vendor until payments in full have been made.

It is also claimed, though the contract notes made at the time of the delivery of the goods evidenced an intention of a conditional sale, yet when the parties thereafter determined and adjusted their accounts, and a new note was made for what was then due, such transaction made it an absolute sale, with mere security for a debt. The contention is not sound. The new notes were worded and conditioned like the original or prior notes, and, as the evidence shows, were made only to facilitate the keeping of the accounts, and, as found by the court, none of the original or prior notes were surrendered or yielded up. If the original notes made at the time of the delivery of the goods evidenced a transaction of a conditional sale, how can it be said that a new note of exactly the same terms and conditions, and also evidencing only the same transaction, shows an absolute sale, especially when the prior notes have not been surrendered or yielded up, and no agreement made to do so? If the original transactions were conditional sales, they could only be converted into absolute sales by some subsequent agreement as evidenced by the terms of some contract, or by some act or conduct of the parties. The mere taking of new contract notes worded and conditioned like the original, and merely evidencing the same transaction, is no evidence

of such fact. The trial court ruled correctly holding the contract notes in question conditional sales, and, as the condition upon which they were made had not been performed, title 'to the property sold and delivered by virtue thereof 'did not pass to Fairchild, and therefore his mortgage to appellant on such property is as to respondent, of no effect.

The remaining question is that of costs. Inasmuch as judgment was for respondent for part of the property sued for and part for appellant, the court in the exercise of discretion, directed that each party pay his own costs. Appellant contends the judgment in this particular ought to have been that each party be entitled to costs. In the absence of some statutory provision authorizing it, costs in actions at law cannot be apportioned. 11 Cyc. 28. Section 3339, Rev. St. 1898, provides that costs are allowed of course to the prevailing party, among others, in an action to recover the possession of personal property. Section 3341 gives the court discretion to apportion costs in all other actions than those mentioned in the section above. We are of the opinion that in actions of this kind the court is not given discretion to apportion, but must allow costs as matter of course to the prevailing party. Miller v. Zeigler, 3 Utah 17, 5 Pac. 518; Dudley v. Facer, 8 Utah, 403, 32 Pac. 668; Phipps v. Taylor, 15 Or. 484, 16 Pac. 171; Dresher v. Corson, 23 Kan. 313; Lanyon v. Woodward, 65 Wis. 543, 27 N. W. 337; Rohr v. McCaig, 33 Cal. 309; 11 Cyc. 28. In such cases authorities somewhat differ in regard to the rule awarding costs, but this is mostly due to different statutory provisions. Under our statute we think the correct rule is, in action for the recovery of personal property, where possession was not taken by plaintiff prior to judgment, though he recovers judgment for only part of the property sued for, he nevertheless is the prevailing party, and it is entitled to all his costs as matter of course, and defendant is entitled to no costs. Where, however, plaintiff takes the property from the possession of the defend-

Furniture & Carpet Co. v. Sorensen.

ant, and has judgment only for part, and defendant for part, then in such case both parties are entitled to costs as matter of course; for in such case defendant has been wrongfully deprived of the possession of property rightfully his, and to that extent, and in justifying and demanding it back, he is an actor and a plaintiff (section 3165, Rev. St. 1898), and, succeeding therein, is a prevailing party. It does not follow, however, that defendant in such case may tax costs merely incurred in his unsuccessful defense of withholding the property awarded to plaintiff by the judgment. He can only tax costs properly and necessarily incurred with respect to the property awarded to him by the judgment. And the same is true in regard to the plaintiff. And if either should tax costs not properly and necessarily so incurred, on motion made such items should be stricken from the cost bill. It may be that in the exercise of discretion the court can do better justice between the parties by refusing costs to both, or by otherwise apportioning them; but that is matter of legislation. This judgment cannot be reversed, however, because of its discretion as to the payment of costs. Appellant filed his costs bill amounting to $26. Respondent filed none, presumably because of the direction of the court that each party pay his own costs. If appellant were prejudiced by this direction, we could direct that the judgment be modified allowing him his costs. But it is apparent to us that he is not prejudiced. While the taxable costs of respondent are not made to appear with any degree of certainty, yet sufficient does appear from the face of the record, by way of clerks', sheriffs' and witness fees, at the minimum, to overcome appellant's costs. He was therefore benefited, rather than harmed, by the judgment directing each party to pay his own costs, instead of directing that each be allowed costs. Dresher v. Corson, supra, Lanyon v. Woodward, supra.

The judgment of the lower court is affirmed, with costs of appeal awarded to respondent.

BARTCH, C. J., and McCARTY, J., concur.