## PASSOW et al. v. EMERY, Sheriff.

No 2090.  Decided January 5, 1910.  On Application for Rehearing, February 11, 1910 (106 Pac. 935).

1. SALES—CONDITIONAL SALES—RIGHTS OF THIRD PERSONS.  On a conditional sale of personalty retaining the title in the seller, third persons cannot acquire any interest in the property from the buyer by reason of his possession adverse to the seller without the seller's consent.  (Page 59.)

2. CHATTEL MORTGAGES—DISTINGUISHED FROM CONDITIONAL SALE.  A contract between plaintiffs and L. recited that he had ordered certain described chattels for $1,187, terms $650 cash balance in twelve payments, monthly, thereafter, with interest, payments to be secured by a mortgage and insurance on the goods; it being understood that title should remain in plaintiffs until the notes and chattel mortgage were executed by L., or, if the purchase was a cash transaction, then the title should remain in plaintiffs until they received the price in cash.  L. paid $650 with the order, and on receipt of

the goods entered into a contract, reciting that plaintiffs had leased to him the same property for twelve months, L. to pay as rental $1,187, $650 at the execution of the lease and $45 on the first of each month until the whole amount of the rental should be paid, the last payment to be $42; that L. should keep the property in a specified building, pay interest on all unpaid rent, keep the property insured, and on default, plaintiffs to be entitled to the possession of the property. To such contract was appended an option, by which plaintiffs for one dollar granted to L. the right to purchase the property leased for one dollar to be paid by L. on January 1, 1909, but to be void unless the rentals should be paid as provided in the lease, and all the conditions performed by L. *Held* that, no chattel mortgage having ever been given, such instruments constituted, when construed together, a conditional contract of sale, and showed an intention by plaintiffs to retain title until the goods were paid for, and hence, prior to that time, L.'s creditors could obtain no interest in the property adverse to plaintiff's by attachment or otherwise, on the theory that the instruments constituted a chattel mortgage, and that there had been a failure to comply with Comp. Laws 1907, sec. 150, subds. 2, 3, regulating chattel mortgages. (Page 60.)

Appeal from District Court, Third District; *Hon. M. L. Ritchie*, Judge.

Action by Louis Passow and another against Frank C. Emery, as sheriff of Salt Lake County.

Judgment for defendant. Plaintiff appeals.

REVERSED, WITH DIRECTIONS.

*D. B. Hempstead* for appellants.

*Stephens, Smith & Porter* for respondent.

### APPELLANT'S POINTS.

The transaction constituted a preliminary conditional contract of sale, title to remain in vendor until payment. Such contracts have always been upheld by the Supreme Court of Utah. (*Russell v. Harkness*, 4 Utah 197; *Turnbow v. Beckstead*, 25 Utah 468, at page 477; *Hirsch v. Steele*, 10

Utah 18; *Detroit Heating Co. v. Stevens,* 16 Utah 177; *Lip-pincott v. Rich,* 19 Utah 140; *Lippincott v. Rich,* 22 Utah 196; *Standard Laundry v. Dole,* 22 Utah 311; *Freed Furn. & Car. Co. v. Sorensen,* 28 Utah 419.) The case of *Russell v. Harkness,* supra, was affirmed by the Supreme Court of the United States. (See *Russell v. Harkness,* 118 U. S. 663.) That leases of personal property similar in form to the foregoing are upheld either as leases or as conditional sales, see *Gerow v. Castello,* 19 Pac. Rep. 505 [Colo.] If plaintiff's exhibit 2 cannot be construed to be a lease, it can only be construed to be a conditional sale contract of the property described therein; it cannot be construed to be a chattel mortgage. (6 Ency. of Law, 2 Ed., pp. 447-8; 1 Mechem on Sales, sec. 569-573; *Hayes v. Jordan,* 9 L. R. A. 373 [Ga.] and cases cited in notes; *Hineman v. Mat-thems,* 10 L. R. A. 233 [Pa.] and cases cited in notes; *Tufts v. D'Arcambal,* 12 L. R. A. 446 [Mich.] and cases cited in notes.) A provision in the contract that the pur-chaser shall execute a mortgage on the property to secure the payment, does not make the sale absolute unless the mortgage be in fact executed. (*McRea v. Merrifield,* 48 Ark. 160; 1 Mechem on Sales, sec. 583; Hammond on Chattel Mortgages, sec. 4, pp. 9-10; *Nichols v. Ashton* [1891], 155 Mass. 205.)

### RESPONDENT'S POINTS.

In case of doubt as to whether the transaction is a condi-tional sale or a mortgage equity will construe it to be a mortgage. (*Mining Co. v. Baker,* 23 Fed. 258; *Niggler v. Maurin,* 24 N. W. 369; *Rogers v. Burris,* 9 N. W. 786; *D. A. Tompkins Co. v. Oil Vompany,* 137 Fed. 625). This exhibit 2 is nothing more than an instrument securing the payment of the notes which represent the debt and it is con-sistent with the provisions of the original agreement. (Ex-hibit 1). (*Haryford v. Davis,* 102 U. S. 235; *Chicago Ry.*

*Equipment Co. v. Bank,* 136 U. S. 268; *McGurkey v. Toledo & Ohio Ry.,* 146 U. S. 536.)   It is settled law that if a security for money is intended, that security is a mortgage, though it may not bear upon its face the form of a mortgage. (*Singer Mfg. Co. v. Smith,* 19 S. E. 132, construing a lease to be a mortgage).   The omission to demand the security at the time of delivery, or at the time of the giving of the notes is sufficient to preclude the plaintiff from claiming that the transaction from that time was on condition. (*Brundage v. Camp,* 21 Ill. 329; *M. C. R. R. v. Phillips,* 60 Ill. 191; *Husted v. Ingraham,* 75 N. Y. 251).   In the leading case of *Parker v. Baxter,* 86 N. Y. 586, it was held where goods sold for cash or notes are delivered to the purchaser without the cash or notes being given or demanded at the time, the presumption is that the condition is waived, and that a complete title vests in the purchaser.   (*Osborn v. Gantz,* 60 N. Y. 540; *Hennequin v. Sands,* 25 Wend. 639; *Gowan v. Kehoe,* 71 Ill. 66; *Oester v. Sitlington,* 115 Mo. 247; *Farlow v. Ellis,* 15 Gray 229; *Berlin Machine Works v. Trust Co.,* 61 N. W. 1131).

FRICK, J.

Appellants brought this action against respondent, as sheriff of Salt Lake County, to recover the value of certain personal property, of which they claim to be the owners, and which they allege the respondent converted to his own use. Respondent in his answer, after making certain denials, as an affirmative defense alleges that in taking the property in question he acted under process of law issued by a court of competent jurisdiction, and took and sold the same on an execution issued upon a valid judgment, etc. Appellants filed a reply, in which they, in effect, deny all the affirmative matter contained in the answer.   The case was tried to the court without a jury, and the court found the issues in favor of respondent, and entered judgment accordingly. Appellants present the record for review on appeal.

The material facts upon which the legal questions presented by respective counsel arise, briefly stated, are as follows:

The appellants, at the time of the transaction herein re⁻ ferred to, were copartners engaged in business in Chicago, Illinois, under the firm name of Charles Passow & Sons, having a branch office at Salt Lake City, where they were represented by an agent. On December 16, 1907, one Joseph Leautaud ordered certain pool and billiard tables and other articles from appellants by a written order, which, so far as material here, is as follows:

"Mr. Joseph Leautaud, No. 29, Market street of the town of Salt Lake, State of Utah, has this, the 16th day of December, 1907, contracted for and ordered of Charles Passow & Sons, Chicago, Illinois, through their salesman, W. H. Seber, the following mentioned goods. ⋅ This contract subject, however, to the approval of the company. [Describing chattels.] Goods to be shipped on or about at once, to Mr. Joseph Leautaud, town of Salt Lake, State of Utah, subject to delay on account of strikes or other unforeseen accidents, via ——, and the freight payable by the purchaser. Settlement to be made on arrival of goods at station, at office of Charles Passow & Sons. Price, ($1,187.00) eleven hundred and eighty-seven dollars. Terms, ($650.00) six hundred and fifty dollars, cash. Balance in twelve payments of $44.75 each, payable in the 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 following consecutive months with interest at the rate of 8 per cent. per annum. Payments to be secured by first mortgage and fire insurance on said goods above described, expense of which is to be paid by the purchaser. It is understood and agreed that the title to the property described in this contract shall remain with Charles Passow & Sons until the notes and chattel mortgage are fully executed by the purchaser. Or if the purchaser herein is a cash transaction then, and in such event, the title to the property is to remain in said Charles Passow & Sons, also, until they receive the full amount in cash of the purchase."

It is conceded that Leautaud paid appellants the sum of six hundred and fifty dollars of the eleven hundred and eighty-seven dollars mentioned in the order on the day the order was given. The chattels mentioned in the order were subse⁻ quently shipped from Chicago to Salt Lake City, where, on the 28th day of December, 1907, appellants, as vendors, and

said Leautaud, as vendee, entered into the following contract, to-wit:

"This agreement, made and entered into between Louis A. Passow and Henry E. Passow, copartners as Chas. Passow & Sons, of the city of Chicago, in the State of Illinois, as the parties of the first part, and J. Leautaud, of Salt Lake City, county of Salt Lake, State of Utah, as party of the second part.

"Witnesseth, that the parties of the first part hereby lease and let unto the party of the second part the following described personal property, to-wit: [describing chattels] for the term of twelve months from and after the date hereof; and the party of the second part hereby promises and agrees to pay to the parties of the first part, as rental for such personal property during such term, the sum of $1,187.00, to be paid as follows: The sum of $650.00 at the time of the execution of this lease and the sum of $45.00 on the 1st day of each and every month after the date of this lease, until the whole amount of such rental shall have been paid. Last payment to be $42.00.

"The party of the second part further agrees to carefully use the property, hereinbefore described, at No. 29 Post Office Place, in the city of Salt Lake, State of Utah, and not elsewhere; to keep the same in good repair and condition; to pay interest on all rental at the rate of eight per cent. per annum until paid, and to keep said property insured in a solvent company, at the expense of the party of the second part, and in an amount equal to eighty per cent. (80) of the value of such property, with loss, if any, payable to the parties of the first part; and in case the party of the second part shall fail or neglect to secure such insurance, then the parties of the first part shall have the right to secure such insurance, and the amount of the premium paid therefor shall be, upon demand therefor, paid by the party of the second part to the parties of the first part.

"In case default shall be made by the party of the second part in the payment of the rental becoming due hereunder, or any part thereof, or in the performance of any of the terms or conditions of this lease, then and in that event the first parties shall, at any time after such default and while the same continues, be entitled to the possession of the property hereinbefore described, and shall have the right to enter any premises where the same may be and take possession thereof, with or without process of law."

To this contract was appended the following writing, termed an "option:"

"In consideration of the sum of one dollar, to us in hand paid, receipt of which is hereby acknowledged, and the payment of the rental as provided in the foregoing lease, we hereby grant and give unto the party of the second part to the foregoing lease, an option to purchase the property described in the said lease for the sum of one dollar, to be paid by the party of the second part on the 1st day of January, 1909. It is understood and agreed, however, that this option shall be void unless the payments of the rental shall be made as provided in the said lease and each and all of the conditions thereof performed by the party of the second part. Time is the essence of this contract. Chas. Passow & Sons, per W. H. Seber, Sales Agent."

The record further discloses that the vendee of said chattels, namely, Joseph Leautaud, on the 14th day of December, 1907, entered into a written agreement, whereby he leased a certain building from one R. B. Minor, Jr., for the term of one year, commencing on the 1st day of January, 1908, for an agreed rental of one hundred and twenty-five dollars per month, payable monthly in advance; that said Leautaud placed said chattels in said building, which he occupied and used for a pool and billiard room; that thereafter, on or about the 1st day of May, 1908, said Minor, Jr., conveyed said building, including said lease, to the Minor Building Company, a corporation; that said Leautaud defaulted in making payment of the rent due for the use of said building for the months of May, June, July, and August, 1908, aggregating the sum of five hundred six dollars and sixty-six cents; that on the 28th day of August, 1908, while said Leautaud was in possession of said building, and the chattels therein contained and now claimed by the appellants, said building company commenced an action against said Leautaud to recover the amount due for the rent as aforesaid, and, in said action, obtained a writ of attachment, by virtue of which respondent attached and took possession of the chattels claimed by appellants; that on said 28th day of August, said Leautaud duly entered his appearance in said action, and confessed judgment therein as prayed for in the complaint; that on the 1st day of September, 1908, a judgment was duly entered against said Leautaud in said action

"in favor of said building company for the sum of five hundred and six dollars and sixty-six cents and interest, and for fifty dollars attorney's fee; that thereafter an execution was duly issued on said judgment, and the same was duly levied on the chattels claimed by appellants, and the same were duly sold under said execution, and the proceeds thereof applied in part payment of said judgment. It is also made to appear that appellants demanded from respondent the chattels in question immediately after he had taken the same upon said writ of attachment, and again before he sold the same, and also protested the sale.

Upon the trial the court admitted certain evidence over appellants' objections, and excluded some which they offered. They complain of the court's rulings in this regard; but, in view of the result reached, these matters need no further consideration.

The court also admitted in evidence certain letters written by appellants. These letters were admitted in connection with the two instruments which we have set forth at large in this opinion, as having some bearing upon the construction that should be given them. We are of the opinion, however, that in this action appellants' and respondent's rights must be measured and determined from the conditions contained in the two instruments to which we have referred, and hence we shall not refer further to any of said letters. In view that the action is one for conversion each party must stand or fall upon his legal rights. The appellants contend that the transaction between them and said Leautaud, under the decisions of this court, constitute a conditional sale; that the title remained in appellants until the purchase price for said chattels was fully paid; that the same was not paid, but the vendee made default in the payment thereof, and therefore the title and the right to possession of said chattels, as against the respondent, always was and now is in appellants, and therefore the respondent never had or could have any right or title in or to the same, and hence by selling the same was guilty of conversion. The court, however, held that

the instrument executed by Leautaud and appellants on December 28, 1907, constituted a chattel mortgage; that said mortgage, while valid as between the parties thereto, was invalid as against the creditors of Leautaud, and hence as against the respondent, because appellants and said Leautaud had failed to comply with subdivisions 2 and 3 sec. 150, Comp. Laws 1907, relating to chattel mortgages. We cannot conceive upon what theory the trial court based its conclusion in view of the language used in the two instruments, all of which we have set forth at length, and which, in view of both the issues and the evidence, must control in this case. Whatever may be said with regard to the meaning or some of the provisions contained in said instruments, the intention of the parties that the title should not pass to the vendee Leautaud until he had complied with certain conditions is as certain as language can well make it. Whether the terms of the instruments which the court held constituted a chattel mortgage amounted to a lease or a conditional sale in so far as the rights of appellants and respondent are concerned is not of controlling importance. The respondent must fail if the legal title to the property in question was in appellants; for, in such event, it was their property, and not Leautaud's, when respondent levied upon the same. (*Kohler v. Hayes,* 41 Cal. 455.)

But it seems to us that under the decisions of this court there is no escape from the conclusion that the transaction between appellants and Leautaud, as the same is reflected in the written instruments to which we have referred, and which must control in this action, is, in legal effect, a conditional sale, by the terms of which the title to the property in question was to remain in appellants as vendors until the vendee had either executed and delivered a formal chattel mortgage by which the property was conveyed to appellants, or, in case no such mortgage was executed, then until the vendee had paid the full purchase price for said chattels. When and how did the vendee either make and deliver a chattel

mortgage or make payment of the purchase price? From the very terms of the agreement dated December 28, 1907, it is clear that, whatever else it may be called, it is not, and was not intended as, a chattel mortgage. Nor was it intended that thereby the title should pass from appellants to Leautaud. That in the absence of estoppels the intention of the parties, if such intention can be ascertained from their agreement, must control in this class as in all other cases, and that the whole agreement of the parties and the surrounding circumstances attending the transaction must be considered in arriving at such intention, is well stated by Mr. Justice Straup in the case of *Freed, etc., Co. v. Sorensen,* 28 Utah 419, 429, 79 Pac. 564, 567, 107 Am. St. Rep. 731. In discussing the question now under consideration it is said:

"It is well to observe that the determination whether a sale is absolute or conditional depends primarily upon the intention of the parties, to be gathered from all the terms of the contract, the circumstances attending the transaction, and the conduct of the parties. This is to be determined, not from any one or several stipulations in the contract disconnected from all others, and so construed as to render other portions of the contract nugatory, but it is to be determined by ascertaining the ruling intention of the parties, gathered from all the language they have used, and from a consideration of the whole contract, and, if possible, to give it such construction as will harmonize and give effect to all of its provisions."

If we apply the foregoing rule of construction to the language of the parties as contained in the written instrument introduced in evidence in this case, we can see no escape from the conclusion that, whatever else the ruling intention of the parties may have been, they did not intend that the title to the chattels in question should pass from appellants to said Leautaud unless and until the full purchase price thereof was paid. The passing of title therefore was made dependent on the payment of the purchase price. Whether the transaction be termed a lease or a conditional sale of the chattels cannot affect the result. (*Kohler v. Hayes, supra.*) Whatever such a transaction may be called it is neither an

absolute sale nor a mortgage. (1 Mechem on Sales, sec. 585.) Where, as in the transaction in question, the title is retained by the vendor, this court, as appears from the cases cited by Mr. Justice Straup, beginning with *Russell v. Harkness,* 4 Utah 197, 7 Pac. 865, to *Freed, etc., Co., v. Sorensen, supra,* has consistently and persistently held that a third person cannot acquire any interest in the property from the vendee by reason of his possession adverse to the vendor, without his consent, either express or implied. Whether such a rule, in all cases and under all circumstances, reflects the most equitable reults is not a material question now. Those who transact business in this state have the right to rely upon the law as declared in the decisions of this court, and are entitled to the full legal effect of contracts respecting conditional sales. Nor are the legal effects of such contracts to be avoided by false or unnatural constructions. Such contracts, as pointed out by Mr. Justice Straup in the case quoted from, are to be considered and construed like other contracts, and if, by a fair and reasonable construction of any contract, it is apparent that the parties intended that the title should pass, or, if the ordinary and usual meaning of their language leads to such a result, then the transaction should be held to be a sale absolute, and treated like other sales. So long as it is clear that the parties did not intend title to pass, and the contract is legal, and in no way contravenes either public policy or a positive statute, the courts should enforce the contract made by the parties, and not make one for them.

Nor is the contention that appellants had not declared a forfeiture of the prior payment, either in the contract or afterwards, material. As between the parties to this action, and in view of the issues, it is not material what, if any, equities may exist as between the vendor and the vendee of the chattels, or any of his creditors. This is well illustrated in *Thirlby v. Rainbow,* 93 Mich. 164, 53 N. W. 159. Whatever rights the vendee or any of his creditors might have in

a court of equity where, in view of proper pleadings, all the parties were in court, we need not decide. It may be that, where the vendee has paid nearly the whole purchase price, and thus has acquired a large equity in the chattels, either he or any creditor of his, in a proper proceeding in a court of equity, might require the vendor to receive the balance due on his contract, and that the court, after such payment, would then deal with the property as belonging to the vendee. The question, however, is not before us, and we express no opinion one way or the other upon it.

In view of what we have said, it follows that the court erred in holding that, under the contract in question, the title to the chattels passed from appellants to Leautaud, and that the transaction constituted a mortgage. The judgment in favor of respondent, therefore, cannot be sustained.

The judgment is reversed, with directions to the trial court to grant a new trial, and to proceed with the case in accordance with the views herein expressed; appellants to recover costs.

STRAUP, C. J., and McCARTY, J., concur.

### ON APPLICATION FOR REHEARING.

FRICK, J.

Respondent has filed a petition for rehearing, in which it is contended that this court erred in holding that it was the real intention of the parties to the agreement, set forth in the original opinion, that the title to the chattels herein mentioned should not pass "to said Leautaud unless and until the full purchase price thereof was paid." It is contended that the title was to be retained by appellants until payment was made only in case the transaction was a cash one; that the transaction passed on by us was not a cash transaction, and hence the condition that the title should not pass until full payment of the purchase price did not apply. In order

to prove this counsel for respondent argue in their application for rehearing that, if the mortgage referred to in the original order had been executed and delivered, no one could doubt that upon its execution and delivery the title would have passed from appellants to Leautaud. From this statement it is assumed that under the facts and circumstances of this case the title passed without the payments having been made. This contention is, however, based upon the theory that, if the appellants unconditionally delivered the chattels to Leautaud without insisting upon their payment in cash, or upon the execution and delivery of the mortgage in the original order mentioned, then the appellants have waived the condition precedent to the passing of title, and that the title to the chattels would have passed. As to whether appellants unconditionally made such a delivery it is contended is a question of fact which, as the opinion now stands, respondent is prevented from trying. When counsel for appellants, at the trial, attempted to show why the chattel mortgage was not executed and delivered, and further offered to explain why the agreement called a lease was executed in lieu of the mortgage, counsel for respondent objected, and the court sustained the objection. Both court and counsel then entertained the view, no doubt, that whether title to the chattels passed or not must be determined as a question of law from the terms of the written agreement entered into between appellants and Leautaud. In view of the issues we think the ruling was correct. In preparing the original opinion we thought, and still think, that, in view of all the facts and circumstances disclosed by the record, the question as to whether the parties intended that the title to the chattels should pass, and whether or not it did pass, is a question of law. In view of this conclusion no other result was possible than the one reached in the original opinion. The application for a rehearing, therefore, should be, and accordingly is, denied.

STRAUP, C. J., and McCARTY, J., concur.