## McCORNICK & CO. v. BASSETT, County Treasurer.

No. 2893.   Decided March 1, 1917.   Rehearing denied April 10, 1917.
(164 Pac. 852.)

1. TAXATION—DOUBLE TAXATION OF CAPITAL STOCK—RELATED COR-
PORATIONS—"OWNER"—"HAS BEEN TAXED." Where plaintiff bank
owned all the stock in building corporation in which it had
invested one-half its capital stock, and which was evidently
organized by the bank for its convenience, and the two concerns
being in fact merged, the bank was the "owner" of the building
held by the building company, within meaning of Const. art.
13, Sections 2, 3, and Comp. Laws 1907, Sections 2505-2509, pro-
viding that corporate property shall not be doubly taxed, and
the phrase "has been taxed" in such Constitution and statutes
does not refer only to property represented by capital stock
which has been directly and actually taxed in the name of such
corporation in view of Const. art. 13, Section 2, and Comp.
Laws 1907, Section 2505, subd. 1, providing that provisions
shall not be so construed as to authorize taxation of capital
stock when property represented by such stock has been taxed.
(Page 450.)

2. TAXATION—DOUBLE TAXATION OF CAPITAL STOCK—ASSESSMENT—
PRESUMPTION.   Where bank furnished assessor statement as
required by Comp. Laws 1907, Section 2507, showing ownership
of building *held* by building company of which bank held all the
stock and in which it had invested one-half of its capital stock,
and assessor erased that property from list and assessed it to
building company, but assessed capital stock as given without
deducting value of building, it will be presumed that the assess-
ment of bank's capital stock also covered such property, thus
making double taxation.   (Page 450.)

3. TAXATION—DOUBLE TAXATION OF CAPITAL STOCK—RELATED COR-
PORATIONS.   Taxation of a bank's capital stock without deduct-
ing value of realty owned by building company of which bank
held all stock representing one-half of bank's capital which
realty was taxed to building company, was double taxation,
prohibited by Const. art. 13, Sections 2, 3, Comp. Laws 1907,
Sections 2505-2509.[1]   (Page 452.)

Appeal from District Court, Third District; *Hon. Geo. G.
Armstrong,* Judge.

---

[1]*Com. Nat. Bank* v. *Chambers,* 21 Utah 324, 61 Pac. 560, 56 L. R. A.
346.

Action by McCornick & Co., Bankers, against Fred C. Bassett, County Treasurer of Salt Lake County.

Judgment for Defendant. Plaintiff appeals.

REVERSED with directions to enter judgment for plaintiff.

*Pierce, Critchlow & Barrette* for appellant.

*H. L. Mulliner* for respondent.

## STATEMENT OF FACTS.

This is an action against the treasurer of Salt Lake County to recover for money paid under protest by plaintiff, McCornick & Co., Bankers, a corporation, hereinafter called bank, on account of taxes alleged to have been unlawfully levied and collected. The bank, at the time the taxes were levied and collected, was doing a general banking business in Salt Lake City, Utah. It was capitalized for $600,000, represented by 6,000 shares of capital stock of the par value of $100 per share. The bank owned all of the stock of another corporation of the name of McCornick Building, hreinafter called the building company. This second corporation owned a certain building and the land upon which the building stands, known as the McCornick Building, situated in Salt Lake City, Utah. The bank conducted and carried on its business in this building. $300,000 of the assets of the bank—the equivalent of one-half of its paid-up capital stock—were invested in the capital stock, and the whole thereof, of the building company. The building and the land upon which it stands were, in the year 1913, assessed to and in the name of the building company.

It is alleged in the complaint, and admitted in the answer, that the property was, for the purpose of taxation, valued at $168,200, and that "on or about the 15th day of November, 1913, said McCornick Building paid to defendant, as treasurer of Salt Lake County, the sum of $6,341.41, said sum being the taxes levied and assessed against the real estate and improvements above described, for state, county, and municipal purposes." On the 27th day of February, 1913, the cashier

of the bank listed on a printed form or blank. furnished him by the assessor the capital stock of the bank at $600,000, its surplus and reserve fund at $120,000 and its undivided profits at $79,143, making a total of $799,143. He also listed three pieces of real estate owned by the bank and situate in Salt Lake City, Utah, at $11,120. This sum was deducted from the $799,143, representing the value of the capital stock, surplus, and undivided profits, leaving the assets of the bank as shown by the statement in which they were listed at $788,023. The assessor then reduced this sum 20 per cent.—a reduction which, the record shows, was made by assessors generally in arriving at the value of the capital stock of banks throughout the state for the purpose of taxation—leaving the assessed valuation of the bank's capital stock at $591,018.

It is alleged in the complaint, and admitted by the answer, "that on or about the 13th day of November, 1913, plaintiff was compelled to pay and did pay, under protest, to defendant as such treasurer, the sum of $22,281.37, said sum being the amount of taxes assessed and levied against 6,000 shares of the capital stock of the plaintiff for state, county, and city purposes for the year ending December 31, 1913. That for the purposes of said tax, said 6,000 shares of capital stock of plaintiff were assessed by the county assessor of Salt Lake County at a valuation of $591,018, and that said tax was levied upon said shares assessed at such valuation." It is also alleged in the complaint "that said stocks so assessed represented in part the real property and improvements thereon, hereinbefore described (the McCornick Building), and which real property was separately assessed as aforesaid." The defendant in his answer denies that the capital stock of the bank represented the real property and improvements last mentioned. It is admitted that the bank duly complained and protested to the county board of equalization of Salt Lake County against the assessed valuation of its capital stock, and at the same time petitioned the board for an abatement of such valuation to the extent that such valuation is represented by the McCornick Building and the land upon which the building stands, and that the board of equalization refused

to allow a deduction or abatement of any part of said levy and tax.

The cause was tried to the court. From a judgment rendered in favor of defendant, plaintiff appeals.

McCARTY, J. (after stating the facts as above).

The important question presented by this appeal is: Was the bank (appellant) entitled to have the sum at which the real estate and improvements thereon of the building company was assessed deducted from the value of its capital stock as fixed by the assessor for taxation purposes? It is contended that since the bank owned all of the capital stock of the building company at the time the taxes in question were levied and collected, it, in effect, owned the real estate mentioned —assessed to and in the name of the building company—and that such real estate and improvements constituted a substantial portion of the bank's assets upon which the valuation of its capital stock, as fixed by the assessor for the purpose of taxation, was based, and that it necessarily follows that the taxing of the real property mentioned, and the taxing of the capital stock of the bank, the value of which, it is contended, is partly based upon and derived from the ownership of the property by the bank, is double taxation to the extent of the assessed valuation of the real property and is in contravention of Section 2, Article 13, of the Constitution of Utah, which, so far as material here, provides that:

"All property in the state    *    *    *    shall be taxed in proportion to its value, to be ascertained as provided by law. *The word property,* as used in this article, *is hereby declared to include moneys, credits, bonds, stocks, franchises and all matters and things (real, personal and mixed) capable of private ownership; but this shall not be so construed as to authorize the taxation of the stocks of any company or corporation, when the property of such company or corporation represented by such stocks, has been taxed.*" (Italics ours.)

Section 3, same article, provides that:

"The Legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money, and shall prescribe by general

law such regulations as shall secure a just valuation for taxation of all property, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property.''

These provisions of the Constitution in plain and explicit terms provide that there shall be a uniform rate of taxation in this state so that every person, company, and corporation will be compelled to bear, as nearly as may be, his, her, or its pro rata of the burdens of general taxation according to the value of the taxable property of such prson or corporation. And it is not contemplated that, when property is once assessed for general taxes according to its value and at the same rate as other property subject to the same tax is assessed, it may again be taxed in some other way when the burden of both taxes falls on the same person, and while other property subject to the same tax is assessed but once. To meet the requirements of the Constitution in that regard, in so far as they relate to the taxation of the capital stock and assets—property—of banking corporations, the Legislature presumably enacted Sections 2505, 2507, 2508, and 2509, Comp. Laws 1907. Subdivision 1 of Section 2505, and the part of Section 2 of the Constitution which we have italicized, are identical. Section 2507 provides, so far as material here, that:

''The stockholders in every bank or banking association, organized under the authority of this state or of the United States, must be assessed and taxed on the value of their shares of stock. * * * The cashier or other accounting officer of every such bank must furnish a verified statement to the assessor showing the amount and number of shares of the capital stock of each bank, the amount of its surplus or reserve fund or undivided profits, the amount of investments in real estate, which real estate must be assessed to said bank and taxed as other real estate,'' etc.

Section 2508 provides:

''In the assessment of the shares of stock mentioned in the next preceding section, each stockholder must be allowed all the deductions and exemptions allowed by law in assessing the value of other taxable personal property owned by in-

dividual citizens of this state, and the assessment and taxation must not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this state.''

Section 2509 provides:

''In making such assessment, there must also be deducted from the value of such shares such sum as is in the same proportion to such value as the assessed value of the real estate of such bank or banking association in which such shares are held bears to the whole amount of the capital stock, surplus, reserve, and undivided profits of such bank or banking association.''

Section 2643 provides in general terms that property shall not be ''assessed more than once.''  The cashier of the bank, as required by Section 2507, Comp. Laws 1907, furnished the assessor with a statement in which he had listed the McCornick Building, and the land upon which it stands as an asset of the bank.  This piece of property and the improvements thereon were later, presumably by the assessor, erased—eliminated—from the statement and assessed to and in the name of the building company.  It is not claimed, nor can it be successfully urged, that the manner or method of listing and assessing the property was irregular.  It appears that that statute (section 2507, *supra*) was followed in that regard. The complaint is that the amount for which the McCornick Building and the land upon which it stands were assessed was not deducted from the assessed valuation of the bank's capital stock.

Counsel for respondent contend that the phrase, ''has been taxed,'' as used in the constitutional and statutory provisions mentioned, refers to property only that is represented by the capital stock of a corporation, which property has been ''directly and actually'' taxed in the name of such corporation. As herein pointed out, section 2, article 13, Constitution, and subd. 1, section 2505, Comp. Laws 1907, provide that the provisions therein contained ''shall not be so construed as to authorize the taxation of the stocks of any company or corporation, when the property of such  *  *  *  corporation, represented by such stocks, has been taxed.''

The first question is, Was the McCornick Building, within the meaning of the law, the property of the bank? and, second, was the value of that asset of the bank merged in and did it constitute a part of the assessed valuation of the capital stock? As suggested by counsel for the respondent in their printed brief "appellant placed this corporate entity between it and this real estate for its own advantage." And again they say, "It must have had many advantages, otherwise plaintiff would not have chosen this species of personal property rather than the ownership of the realty."

The record shows that the bank invested $300,000, a sum equal to one-half of the amount for which it was capitalized. While there is no direct proof offered on the point, yet we think it may be fairly inferred from the record that the bank furnished the funds with which to organize and establish the building company to take over this real property for its (the bank's) convenience in conducting and transacting its business, and while there were ostensibly two concerns they were, in effect, merged into one business enterprise. In other words, they constituted two corporations in name only. Mr. Whitney, cashier of the bank, on cross-examination, testified on this point as follows:

"When I say that $300,000 of the capital stock of McCornick & Co., Bankers, was invested in the building, I mean that that much money was invested in the stock of McCornick Building. It was not invested in the building directly, but the stock meant the ownership of the building, and we owned it all."

While it is true that the legal title to the real estate was in the building company, the bank, under the undisputed facts, was the real owner of the property in the sense that the term "owner" is used in the constitutional and statutory provisions under consideration.

Counsel for respondent contend that the record does not show that the valuation placed on the capital stock of the bank by the assessor represented in part the value of the real estate under consideration, and that "it is presumed that the assessor did his duty in making the assessment according to law, and that he made all deductions that should have

been properly made." While there is no proof on this point, yet we think the only inference deducible from the facts is, that the valuation placed on the stock by the assessor represented in part the real estate. The cashier, when he listed the capital stock of the bank and placed its value at $600,000 in the statement furnished by him to the assessor, listed and entered thereon the real estate in question as an asset of the bank. This particular piece of property was, as stated, eliminated from the statement, but no revision was made in the figures furnished by the cashier to the assessor showing the value of the stock before any deductions were made for the other parcels of real estate assessed to and in the name of the bank. The figures contained in the statement which, in the language of the statute, were "to aid the assessor in determining the value of such shares of the capital stock" are as follows:

| | |
|---|---|
| Capital stock .................................... | $600,000 |
| Surplus and reserve fund ...................... | 120,000 |
| Undivided profits .............................. | 79,143 |
| | 799,143 |
| Real estate assessed to bank ..................... | 11,120 |
| | 788,023 |
| Deduction of 25 per cent........................ | 197,005 |
| Capital stock assessed at ....................... | $591,018 |

It will be observed that the stock was assessed at approximately $98.50 per share, nearly par value. It was not shown, nor is it claimed, that the bank owned any property other than that enumerated in the statement, as prepared by the cashier, before the erasures herein referred to were made. The presumption therefore is that all of the assets of the bank were included and that the value of the real estate (McCornick Building) was merged in and represented in part the value of the capital stock as ultimately fixed by the assessor for the purpose of taxation. Manifestly this must be so because it was the cashier in the first instance, and not the assessor, who listed the capital stock at $600,000. To this was added the surplus fund and the undivided profits. He also listed in the

statement the other assets, referred to, of the bank, including the McCornick Building. The assessor made no changes whatever in the figures furnished him by the cashier showing the value of the capital stock, surplus fund, and undivided profits. What he did in the premises was to accept and adopt the figures furnished him by the cashier as to the value of the capital stock and the two funds mentioned, and then, from the sum total, make the deductions mentioned.

We are of the opinion, and so hold, that the taxing of the capital stock of the bank, the value of which was, in part, represented by the real estate in question, without deducting therefrom the assessed value of such real estate was, under the circumstances, double taxation to the extent of the assessed value of the real estate and in contravention of the provisions of the Constitution herein set forth. *Com. Nat. Bank* v. *Chambers,* 21 Utah 324, 61 Pac. 560, 56 L. R. A. 346; *East Livermore* v. *Banking Co.,* 103 Me. 418, 69 Atl. 306, 15 L. R. A. (N. S.) 952, 13 Ann. Cas. 631; *Lewiston Water & Power Co.* v. *Asotin County,* 24 Wash. 371, 64 Pac. 544; *Dexter Horton Nat. Bank* v. *McKenzie,* 69 Wash. 314, 124 Pac. 915; *People* v. *Badlam,* 57 Cal. 594; Cooley on Taxation (2d Ed.), p. 225.

The case is reversed, with directions to the lower court to set aside its judgment of dismissal and enter judgment in favor of appellant against the treasurer of Salt Lake county, as such, in conformity with the views herein expressed. Appellant to recover its taxable costs.

CORFMAN, J., concurs.

FRICK, C. J.

I concur. At first blush I was inclined to the opinion that the plaintiff was not in a position to successfully avail itself of the claim that the tax in question, in a strict legal sense, constituted double taxation. After much reflection, however, and with some hesitation, I have become convinced that under the peculiar provisions of our Constitution, which are quoted by Mr. Justice McCarty, the tax in question does constitute double taxation. If that conclusion be sound, then must it follow that the defendant may not retain the amount sued for in this action.