STILLMAN et al., Board of County Com'rs, v. LYNCH,
County Assessor.

No. 3497.   Decided July 14, 1920.   (192 Pac. 272.)

1.  TAXATION — COUNTY COMMISSIONERS, THOUGH NOT ACTING AS
    BOARD OF EQUALIZATION, MAY DIRECT PERFORMANCE OF DUTY BY
    ASSESSOR.   In view of Comp. Laws 9117 section 1400x3, giving
    county commissioners power to supervise the official conduct of
    all county officers and see that they faithfully perform their
    duties, such board has jurisdiction to direct the assessor to
    comply with the law as to the methods of assessment of bank
    stock and other property, and the board's right to so direct is
    not limited to the time when acting as a board of equalization.

2.  TAXATION—EXEMPTION OF MORTGAGES DOES NOT INCLUDE CONDI-
    TIONAL SALES; "PROPERTY."   Title retaining notes are "property"
    within the purview of the definition in Const. art. 13, section 2,
    providing for taxation; but such notes and so-called conditional
    sales contracts are not embraced within the constitutional pro-
    visions excepting mortgages which were taxable before the
    amendment of 1906, and a mortgage exemption clause cannot
    be extended to include other subjects unless the language nec-
    essarily embraces them.

3.  MORTGAGES—CONDITIONAL SALE CONTRACT IS NOT A MORTGAGE.
    A title retaining note is neither in fact nor in law a chattel
    mortgage, and has none of the characteristics of one, except
    that of security, nor is a conditional sale contract a mortgage.[1]

4.  TAXATION—COURTS CANNOT READ AN EXEMPTION INTO THE CON-
    STITUTION OR A STATUTE.   If there is doubt as to an exemption
    from taxation that doubt will be resolved in favor of taxation,
    and a doubtful clause exempting mortgages must be construed
    to apply strictly to mortgages and instruments classed as mort-
    gages in the statute, and the court cannot, by inference, read
    an exemption of title retaining notes or conditional sales con-
    tracts into the Constitution or into a statute.[2]

5.  TAXATION—ASSESSMENT OF BOTH CONDITIONAL SALE CONTRACT
    AND THE MERCHANDISE IS NOT "DOUBLE TAXATION."   Title retain-
    ing notes and conditional sales contracts are taxable where the
    purchaser has promised to pay the purchase price, but not other-
    wise, and the merchandise is one thing and the purchaser's
    note promising to pay is another, assessable as a credit under
    Comp. Laws 1917, section 5876, and to assess both the note or

credit and the merchandise is not double taxation within the constitutional prohibition.[3]

6.   CONSTITUTIONAL LAW—COURTS CANNOT DICTATE PUBLIC POLICY. The question whether taxation of title retaining notes and some other credits would violate public policy belongs to the legislative department of the government, and the courts cannot dictate in such matters nor base their decisions upon expediency.[4]

7.   TAXATION—OMISSION TO ASSESS PROPERTY CANNOT CONTROL SUCCEEDING OFFICERS.   The omission of the proper officers in the past to assess title retaining notes cannot control a duty imposed by law upon their successors.

8.   TAXATION—"SOLVENT CREDIT" IS ONE WHICH, IN DISCRETION OF ASSESSOR, IS WORTH FACE VALUE AND COLLECTIBLE WITHOUT SUIT. In a provision for assessment of solvent credits, the word "solvent" must be taken in its ordinary meaning, and credits, to be assessable, must be worth their face value, and be collectible not by suit or execution, but in the ordinary course of business, by usual business methods, or, in other words, must be what are called good accounts; and while title retaining notes or conditional sales agreements are not solvent credits per se, and a contract for sale of real estate may or may not be a solvent credit, these problems are for the assessor's good judgment and sound discretion.

9.   TAXATION—LAND SALE CONTRACTS WHERE VENDOR MAY ENFORCE COLLECTION ARE TAXABLE.   A contract where purchaser of real estate agrees to pay the purchase price is a contract of sale, and not one for sale, and, if the payment of the balance of the unpaid price is enforceable by the vendor, the contract is a taxable credit, and assessable to the vendor, since such contracts are property, and whether a so-called option agreement is taxable depends upon whether vendor may enforce collection of the sale price.

10.  TAXATION—LEASES ASSIGNABLE WITHOUT LESSOR'S CONSENT ASSESSABLE WHERE POSSESSING MARKET VALUE.   Leases which may be sold, transferred, and assigned by lessee without lessor's consent may have a cash or market value, the problem of determining which must be referred to the county assessor for solution.

11.  CONSTITUTIONAL LAW—STATUTES PRESUMED VALID.   Every doubt as to the constitutionality of the statutes must first be resolved in favor of validity, and before it can be declared invalid its repugnancy to the Constitution must be entirely clear.[5]

12. TAXATION—WHEN A CORPORATION'S PROPERTY IS TAXED ITS STOCK IS NONTAXABLE. When the property of a corporation has been taxed, its stock is nontaxable.

13. TAXATION—LEGISLATURE HAS POWER TO CLASSIFY PROPERTY. The Legislature has the constitutional power to classify different kinds of property for the purpose of taxation.

14. TAXATION—ADDITIONAL EXEMPTION OF BANK STOCK HELD REPUGNANT TO UNIFORMITY CLAUSE. Const. art. 13, sections 2 and 3, require the Legislature to provide by law a uniform and equal rate of assessment, which the Legislature has attempted by Comp. Laws 1917 sections 5866-5869; but the latter section, in making an additional deduction in assessing bank stock not accorded to other classes or groups of taxpayers, is repugnant to such constitutional provision for uniformity and is void; such section being adopted from Rev. Codes Mont. section 2504, with certain material changes, and our Constitution not containing a special provision as to uniformity upon the same class of subjects as found in Mont. Const. 11, art. 12.6

15. TAXATION—STATES PERMITTED TO TAX NATIONAL BANKS ONLY ON STOCK AND REAL ESTATE. The national banking act limits the power of the state with respect to the taxation of national banks to taxes on shares of stock and real estate of such banks, and state laws must yield to federal laws.

16. CONSTITUTIONAL LAW—WHERE REPUGNANT TO CONSTITUTION LEGISLATIVE CONSTRUCTION CANNOT VALIDATE. Where a taxation statute makes an exemption without express constitutional authorization, and there is no doubt as to its repugnancy to the Constitution, it cannot be validated by invoking a legislative construction.7

17. STATUTES—INVALIDITY OF EXEMPTION TO BANKS HELD NOT TO AFFECT OTHER PARTS OF LAW. While Comp. Laws 1917, section 5869, is invalid because making an exception in assessment of banks not warranted by the Constitution, yet the elimination of such section does not endanger or repeal the taxation laws, which are complete without it.

Original proceedings by C. F. Stillman and others, constituting the board of county commissioners of Salt Lake county, against James E. Lynch, as assessor of said county. Hearing upon demurrer, motion to quash alternative writ, and to dismiss.

Prayer for Mandamus.   Writ issued

DEMURRER OVERRULED, AND PEREMPTORY WRIT OF MANDATE ORDERED ISSUED, with directions to defendant.

*Richard Hartley,* County Atty., and *D. A. Skeen,* Asst. County Atty., both of Salt Lake City, for plaintiffs.

*Jno. A. Marshall, Jas. Ingebretsen, G. A. Iverson, A. B. Irvine,* and *B. J. Stewart,* all of Salt Lake City, for defendant.

---

1 *Freed v. Sorenson,* 28 Utah, 419, 79 Pac. 564, 107 Am. St. Rep. 731; 3 Ann. Cas. 634; *Passow* v. *Emery,* 37 Utah, 49, 106 Pac. 935.

2 *Judge* v. *Spencer,* 15, Utah, 242, 48 Pac. 1097.

3 *Judge* v. *Spencer,* 15 Utah, 242, 48 Pac. 1097.

4 *Rio Grande Lumber Co.* v. *Darke,* 50 Utah, 114, 167 Pac. 241, L. R. A. 1918A, 1193.

5 *Rio Grande Lumber Co.* v. *Darke,* 50 Utah, 114, 167 Pac. 241, L. R. A. 1918A, 1193.

6 *Continental Nat. Bank* v. *Naylor,* 54 Utah, 49, 179 Pac. 67; *Pingree National Bank* v. *Weber County,* 54 Utah. 599, 183 Pac. 334; *Rio Grande Lumber Co.* v. *Darke,* 50 Utah, 114, 167 Pac. 241, L. R. A. 1918A, 1193.

7 *State Board of Land Com'rs* v. *Ririe,* 56 Utah, 213, 190 Pac. 59; *McCornick & Co.* v. *Bassett,* 49 Utah, 444, 164 Pac. 852.

WEBER, J.

Plaintiffs have instituted in this court an original proceeding in which they ask for a writ of mandate against the defendant, as assessor of Salt Lake county, commanding him to assess certain property which he has refused as county assessor to assess and tax, and directing him to correct the method of taxing bank stock, which method plaintiffs contend is not authorized by law, and which, in effect, destroys the uniformity of taxation required by law. Plaintiffs allege that when the plaintiffs, constituting the board of county commissioners of Salt Lake county, learned that certain property was not assessed, and that the wrong method was used in assessing bank stock, said board, in regular session, entered an order directing the assessor to assess the property not as-

sessed, and to adopt a correct method for assessing bank stock; that the assessor refused to comply with this order.

It is sought by this action to compel the assessor to assess three different classes of property, namely, so-called title retaining notes or conditional sales contracts, real estate contracts, and leases on real property, and to compel him to tax bank stock at its market value as determined by him, and to allow a deduction from the total market value of the shares of bank stock so determined, of the assessed value of the real estate only, if any, owned by the bank.

To the complaint the defendant has demurred, and has moved to quash the alternative writ thereon issued, and to dismiss the proceedings for the reason that neither the writ nor the complaint, nor any of the several paragraphs or divisions thereof, nor any of the respective alleged causes of action therein, contain facts sufficient to state any cause of action, or any ground for the relief sought, or any relief against defendant.

Defendant first maintains, in support of his demurrer to the complaint, that plaintiffs, as a board of county commissioners, have no jurisdiction to direct the assessor as to the method he shall employ in the assessment of bank stock, and that the plaintiffs, as a board of county commissioners, are not charged with any duty respecting the assessment of bank stock, and therefore are not entitled to raise the constitutionality of the statute in the manner here attempted. It is argued that, while the commissioners may direct and enforce the performance of public duties by county officers, the Constitution, and the statutory provisions enacted pursuant thereto, take the assessment of property for taxation out of the hands of the county commissioners as such, and place it in the hands of the commissioners while acting as a board of equalization. A sufficient answer to the proposition advanced by the defendant is found in the broad and comprehensive language of Comp. Laws Utah 1917, section 1400x3, which gives to the board of county commissioners in each county in this state jurisdiction and power "to supervise the official conduct of all county officers and

officers of all precincts, districts, and other subdivisions of
the county (except municipal corporations); see that they
faithfully perform their duties.   *   *   *''

Plaintiffs in their complaint first seek to have title retain-
ing notes placed on the assessment roll.   Section 2 of article
13 of the Constitution of Utah provides:

"All property in the state, not exempt under the laws of the
United States, or under this Constitution, shall be taxed in propor-
tion to its value, to be ascertained as provided by law.   The word
property, as used in this article, is hereby declared to include
monies, credits, bonds, stocks, franchises and all matters and things
(real, personal and mixed) capable of private ownership, but this
shall not be so construed as to authorize the taxation of the stocks
of any company or corporation, when the property of such company
or corporation represented by such stocks, has been taxed.   The
Legislature shall provide by law for an annual tax sufficient, with
other sources of revenue, to defray the estimated ordinary expenses
of the state for each fiscal year.   For the purpose of paying the
state debt, if any there be the Legislature shall provide for levying
a tax annually, sufficient to pay the annual interest and principal
of such debt, within twenty years from the final passage of the law
creating the debt."

That title retaining notes are "property" within the pur-
view of the constitutional definition of property is not con-
troverted; but it is claimed by the defendant that title
retaining notes and so-called conditional sales are em-
braced within the constitutional provision exempting-        2
mortgages from taxation, and that, in construing the
provision of our Constitution exempting mortgages from
taxation, "it is apparent, if we consider the history of the
subject in so far as Utah is concerned, that it was clearly the
intention of the framers of that provision of the Constitution
to exempt secured debts from taxation."   When the Consti-
tution was ratified by vote of the people in 1895, that instru-
ment was silent on the question of mortgage exemptions, and
before the amendment, which was adopted in 1906, mortgages
were taxable.   In the debate in the constitutional convention
on the proposition to exempt mortgages from taxation it was
never intimated by any of the able jurists and publicists who
participated in the discussion that the word "mortgage"

meant anything except what it is generally understood to mean. When the Legislature submitted to the voters the proposed constitutional amendment exempting mortgages from taxation, if the intent had been to broaden the meaning of the word "mortgage" so as to embrace all "secured" debts expression would certainly have been given to that concept. Instead of a strained and forced definition of the word "mortgage," and using it in its broadest sense, it should be accepted in its popular sense, which is the way it is used in the statutes on the subject of mortgages. When mortgages are declared exempt from taxation, exemptions of other property should not and cannot be included, unless the language of the Constitution is such as to necessarily embrace other subjects of taxation. "In all statutes exempting private property from taxation, words descriptive of the property must receive the narrowest interpretation of which they are reasonably capable." *Trustees* v. *City of Paterson,* 61 N. J. Law, 420, 39 Atl. 655.

When a merchant sells a stove for cash the money received is assessed if he has it on hand on January 1st. If he has sold to the customer on credit, the charge account, if unpaid the succeeding 1st of January, is assessed for taxation if it is a solvent credit. If for the stove, or later for the debt, he takes his customer's promissory note, that is taxable. Thus far all agree. Counsel for defendant maintain that if the merchant takes the customer's note, and it is therein stipulated that the title to the stove shall not pass to the customer until the note is fully paid, the note is transmuted into a chattel mortgage, and, mortgages being exempt from taxation, therefore the title retaining note is not taxable.

As we read the statutes of Utah, a title retaining note    3 is neither in fact nor in law a chattel mortgage. It has none of the characteristics, indicia, or elements of a chattel mortgage, except that of security. Nor is a conditional sales contract a mortgage. *Freed, etc., Co.* v. *Sorensen,* 28 Utah 419, 79 Pac. 564, 107 Am. St. Rep. 731, 3 Ann. Cas. 634; *Passow* v. *Emery,* 37 Utah 49, 106 Pac. 935. A hotel or tavern keeper has a lien upon the baggage of his guest for board,

lodging, and rent.  He may retain possession of the baggage
until the amount due from the guest is paid, and, in case of
nonpayment after thirty days, the debt thus "secured" by a
lien upon personal property may be foreclosed in the manner
provided for the foreclosure of chattel mortgages.  Such a
lien is clearly a "secured credit."  And so with every lien on
personal or real property, unless it plainly and clearly comes
within what the statute denominates a mortgage, it cannot be
classed as a mortgage for the purpose of making it exempt
from taxation.

If as to exemption there is doubt, that doubt will be re-
solved in favor of taxation.  It has been said that taxation is
the rule, exemption the exception.  In our opinion no doubt
exists as to the proper construction of the constitutional pro-
vision exempting mortgages from taxation.  The exemption
applies strictly to mortgages—such instruments as are classed
as mortgages in the statute.  That exemption cannot be en-
larged by inference.  The rule by which we must be guided
is well stated in *Judge* v. *Spencer*, 15 Utah 242, 4 Pac. 1097,
as follows:

"The presumption is that all exemptions intended to be granted
were granted in express terms.  In such cases the rule of strict
construction applies, and, in order to relieve any species of property
from its due and just proportion of the burdens of the government,
the language relied on, as creating the exemption, should be so clear
as not to admit of reasonable controversy about its meaning, for
all doubts must be resolved against the exemption."

Insisting that "a debt secured by mortgage is not different
from any other secured debt when considered in connection
with tax laws," and charging that the petitioners "seek de-
liberately to impose a burden upon one person and relieve
another who holds precisely the same species or class of
property," the attorney for the real estate association sug-
gests in his brief that "to overcome this difficulty it is only
necessary to read into the exemption" of mortgages from
taxation "the obvious meaning intended by the Legis-
lature."  To read an exemption from taxation into the
Constitution or into a statute would be to do a thing
that all courts have denounced as wrong.  In *Vicksburg, etc.,*

*Rd. Co.* v. *Dennis*, 116 U. S. 665, 6 Sup. Ct. 625, 29 L. Ed. 770, the Supreme Court of the United States held that exemption from taxation "should never be assumed unless the language used is too clear to admit of doubt," and that "nothing can be taken against the state by presumption or inference." See, also, *Judge* v. *Spencer*, supra.

In 7 Fletcher, Cyc. Corp. section 4638, page 8226, it is said:

"Silence is equivalent to the denial of exemption, and the validity of a claim thereof is not established by the fact that there has been a failure to tax. 'When exemption is claimed, it must be shown indubitably to exist. At the outset every presumption is against it. A well-founded doubt is fatal to the claim. It is only when the terms of the concession are too explicit to admit fairly of any other construction that the proposition can be supported.'" Citing *Farrington* v. *Tennessee*, 95 U. S. 679, 24 L. Ed. 558.

It is insisted that to tax title retaining notes and conditional sales agreements "would be double taxation in the legal sense, such as is prohibited by our Constitution." Though mortgages are by the Constitution eliminated from the class of assessable and taxable secured credits, the principle upon which taxation upon both the mortgage indebtedness and the mortgaged property was held to be not double taxation in *Judge* v. *Spencer*, supra, is applicable here. To illustrate what they claim to be double taxation, the attorneys for the Intermountain Automotive Dealers' Association say in their brief filed in this case:

"An automobile dealer has in his stock on January 1st an automobile valued at $2,000. (Incidentally, about 75 per cent. of the automobiles sold in Salt Lake are carried as inventory as of January 1st, and must be declared for assessment as such. This arises from the fact that the dealer must get in his stock before the selling season starts, a few weeks after New Year's.) This he must declare as part of his inventory for the assessment roll. In March he sells the car, and the buyer pays $500 in cash and gives a title retaining note for $1,500. If the proposed law is upheld the county assessor must assess the title retaining note against the seller at $1,500. The seller is therefore paying taxes on property of $4,000, including the $500 cash. Assessment must likewise be made against the car in the hands of the buyer at $2,000, as well as for the $500 which he owed on January 1st. The buyer then pays taxes on $2,500. As a matter of fact the only property in the transaction

is the automobile worth $2,000 and the $500 cash; yet the seller pays taxes on $4,000 and the buyer on $2,500, a total of $6,500. The example is only slightly less strong if the car was not on hand January 1st. In such case the seller would still have to be taxed on $2,000 note and cash, and the buyer on a $2,000 car; total, $4,000."

As the assessor is guided by law, the above illustration illustrates the fanciful and the impossible. If the dealer has a $2,000 car, it is assessed to him, and cannot legally be assessed to any one else before the 1st of January following, whether he sells it or not. Suppose he sells the car after January 1st, and receives a partial payment of $500, and a $1,500 title retaining note. The $500 is not assessable till the following January, and not then unless he has the money on hand. Nor is the title retaining note assessable until the following January, and then only to the extent that it is unpaid. If the note is paid during the year the dealer is not assessed upon the money he has received unless he has it on hand on the 1st of the succeeding January, and if the purchaser has the car at the latter date it is of course assessed to him. As a matter of fact, all cars that are bought and received by a dealer after January 1st escape taxation for that year; and if the cars are by him sold, and he receives pay for them during the course of the year and before the 1st of the following January, there are no notes, whether title retaining or otherwise, given for the purchase price of such automobiles that are subject to taxation.

Comp. Laws Utah 1917 section 5876, provides:

"The assessor must, before the first Monday of May of each year, ascertain the names of all taxable inhabitants, and all property in the county subject to taxation, except such as is required to be assessed by the state board of equalization, and must assess such property to the person by whom it was owned or claimed, or in whose possession or control it was at twelve o'clock m. of the 1st day of January next preceding, and at its value on that date. Credits must be assessed as provided in sec. 5878 and sub. 6 of sec. 5877."

What are called conditional sale contracts or agreements may or may not be taxable. It depends wholly upon the terms of the contract and whether the purchaser has prom-

ised to pay the purchase price. A blank form of conditional sale or title retaining note is set forth in the complaint. It is first a promissory note. The consideration of the note is not the receipt of the merchandise mentioned, but a lease and conditional sale upon numerous conditions. Not only does the purchaser, according to the form, execute and deliver his note to the vendor or lessor of the merchandise whose bare possession is given to the purchaser, who is the payer of the note, but the contract provides that title to the merchandise remains in the company until note and interest and any judgment for same are fully paid; and if the purchaser makes any default in either principal or interest, or incumbers or disposes of said merchandise, or removes same from address given without the written consent of the company, or fails to perform any of the obligations specified, or if because of any act of the purchaser the company feels itself insecure, the company shall have the right to declare the unpaid balance thereon forthwith due and payable, and have the right to repossess said merchandise without process of law, and shall have the right to enter upon any premises where the merchandise may be and retake the same, the purchaser waiving any damage for entry. The purchaser agrees that in the event the company repossesses such merchandise it may sell the same at public or private sale with or without notice, and apply the proceeds first to the payment of costs and expenses incurred, second to balance due under the contract, and the purchaser agrees to pay any balance remaining after such disbursements have been made as damages for breach of contract and as rental, said balance to become immediately due and payable. If, however, the proceeds from the sale should be in excess of the balance due on the contract, such excess is to be returned to the purchaser. The purchaser agrees to pay all attorney's fees and costs and all taxes assessed on the merchandise after date of receipt, and to keep same insured in favor of the company to an amount equal to the unpaid balance. There are other provisions that it is not necessary to notice. The essential and important thing is that the transaction involved

in the sale results in a promissory note with an ironclad lease thereto attached. Assuming the merchandise was sold in December, the assessor, who assesses it as of noon on the 1st day in January, would assess it in the hands of the purchaser, and the credit or promissory note in the hands of the merchant. He assesses two species of property. If the merchandise was in possession of the dealer on January 1st it was assessable to him, and if he took a note therefor, whether secured in the manner hereinbefore detailed or not, the note would be taxable if the merchant was the owner of it on the first day of the next year, and the merchandise would be assessable at that date to the purchaser. This clearly is not double taxation. Double taxation means taxing the same property twice. The merchandise is one thing; the note given by the purchaser is another. It is not double taxation to assess each, the note or credit, and the merchandise.

It is insisted in several of the briefs that to tax title retaining notes and some other credits whose assessability and taxability are in question would violate public policy, and result in inestimable and irreparable injury to the business interests of the state. The question of policy and expediency belong to the legislative department of the government, and it is not for the courts to dictate in matters of policy nor to base their decisions upon what is or what is not expedient. *Rio Grande Lumber Co.* v. *Darke,* 50 Utah, 114, 167 Pac. 241, L. R. A. 1918A, 1193. However, just how public policy would be violated and outraged by collecting from dealers in pianos or automobiles their just proportion of taxes is not made clear. Nor is it explained how great, or any, damage can be done to the business interests of the state. Enforcement of law is never a violation of public policy. Financial cataclysms would not result even if no property of any kind were permitted to escape its proportion of taxation.

It is further argued that automobile dealers are able to conduct their business by making quick discount of their title retaining notes, and that if those notes were taxed it

would be extremely doubtful whether banks in Utah would care to discount such paper, and that dealers would therefore discount it with banks elsewhere and outside of the state. Again we fail to perceive either the force or logic in the argument made. If the notes are sold to bankers, and the dealers do not have them on January 1st, they are not assessable to the dealers; and, if they belong to the bank on January 1st, they also escape taxation because the personal property as such of incorporated banks is not assessable in this state. Why, then, should banks refuse the paper? If there is some mysterious problem, some financial legerdemain, connected with the subject of discounting title retaining notes, that must be properly solved in order to keep the dealers from selling their notes outside of the state, and that would drive the auto installment sale business out of the state, this court is powerless to avert the threatened calamity.

It is argued that title retaining notes have not been taxed in the past. The omission of the proper officers in the past to assess that kind of property cannot control a duty imposed by law upon their successors. *Hibernian Benevolent Soc.* v. *Kelly,* 28 Or. 173, 42 Pac. 3, 30 L. R. A. 167, 52 Am. St. Rep. 769.

The defendant's argument that only solvent credits must be placed on the tax books is unassailable; the word ''solvent,'' as applied to ''credits,'' must be taken in its ordinary meaning. Those credits, in order to be assessable, must be worth their face value, and be collectable, not by suit or on execution, but in the ordinary course of business and by usual business methods. In other words, they are what are called ''good'' accounts. In one of the briefs submitted to us it is said that conditional sales agreements are not solvent credits per se. That is true. A title retaining note or conditional sale agreement, or a contract for sale of real estate, may or may not be a solvent credit; but those are problems for the assessor, and must be left to his good judgment and sound discretion.

Plaintiffs in their complaint allege that taxable land contracts amounting to $10,000,000 have not been put on the tax

books, and that "there is, within Salt Lake county, a class of property, consisting of contracts for the sale of real estate, by the terms of which contract the vendor has agreed to sell to the vendee real estate upon the completion of the payments specified in the said contract, which contracts are held and owned by various individuals, firms and corporations to whom payments on the said contracts are made at stated times by the vendee named therein, who is in possession of and occupies the real estate described in the said contracts, and pays taxes assessed upon and against the said real estate." The terms of these contracts are not given save as set forth in the above paragraph. If the purchaser of real estate agrees to pay the purchase price, it is a contract of sale and not a contract for the sale of land. If the payment of the balance of the unpaid purchase price is enforceable by the vendor, the contract is a taxable credit and assessable to the vendor. It is held by the great weight of authority that contracts of sale, where the seller agrees to sell and the buyer agrees to buy and pay the purchase price, are property, and taxable as such to the vendor under a statute such as that of this state. On the question of taxing options the authorities are in conflict. In Kansas, options have been held to be taxable. James, Option Contracts, section 506. *Read* v. *Lewis and Clark County*, 55 Mont. 412, 178 Pac. 177, is a recent Montana case in which the issue was whether an option was taxable. The court held that the contract whose taxation was involved was an option, and that the amount thereon due and unpaid was not a credit or a solvent debt, secured or unsecured. Our statute on taxable credits was borrowed from Montana. We agree with the ruling that mere option contracts, whether they involve personal property or realty, are not assessable. Without knowledge of the nature of the contracts beyond the general statement in the complaint herein, it cannot be determined whether these contracts are credits, which, if "solvent credits," should be assessed to the vendors, or whether they are mere options that are not assessable. Again, the question must be

referred to the county assessor for disposition in accordance with what the facts may prove to be.

Plaintiffs insist that the assessor be compelled to place upon the tax rolls leases "by the terms of which the lessee is given the right to the possession of the leased premises and property, and which leases are subject to assignment and transfer by the lessee thereunder." We assume that by assignable leases is meant leases that can be sold, transferred, and assigned by the lessee without permission from, or consent of, the lessor. Such leases may have a cash or market value, especially if for a long period of time at a low rental. Counsel say: "The taxation of leases presents many difficulties; among them the uncertainty of tenure, the presence or absence of conditions of forfeiture and most serious of all, the placing of a value upon them for the purpose of taxation." The difficulty of determining the taxable value is apparent. Sometimes a lease is a valuable asset to the lessee; sometimes it is a liability. Again, the problem is one that must be referred to the county assessor for solution in accordance with the facts.

Plaintiffs claim that the assessor has used an improper method in assessing banks in Salt Lake county. So far as the statute is concerned, the assessor has concededly followed the law as interpreted by this court in *Continental Nat. Bank v. Naylor*, 54 Utah 49, 179 Pac. 67, and *Pingree National Bank v. Weber County*, 54 Utah 599, 183 Pac. 334. In that he has traveled in the plainly marked path of duty. The provisions of the Constitution pertinent to this controversy are found in sections 2 and 3 of article 13 of our state Constitution, as follows:

"Sec. 2. All property in the state, not exempt under the laws of the United States, or under this Constitution, shall be taxed in proportion to its value, to be ascertained as provided by law. The word property, as used in this article, is hereby declared to include monies, credits, bonds, stocks, franchises and all matters and things (real, personal and mixed) capable of private ownership; but this shall not be so construed as to authorize the taxation of the stocks of any company or corporation, when the property of such company or corporation represented by such stocks, has been taxed."

"Sec. 3.   The Legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money, and shall prescribe by general law such regulations as shall secure a just valuation for taxation of all property, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property."

The provisions of the statutes pertinent to this controversy are found in Comp. Laws Utah 1917, sections 5866, 5867, 5868, and 5869, which sections read as follows:

"Sec. 5866.   All taxable property must be assessed at its full cash value.   Land and the improvements thereon must be separately assessed.

"Sec. 5867.   The stockholders in every bank or banking association, organized under the authority of this state or of the United States, must be assessed and taxed on the value of their shares of stock therein, in the county, town, city or district where such bank or banking association is located, and not elsewhere, whether such stockholders reside in such place or not.   To aid the assessor in determining the value of such shares of stock, the cashier or other accounting officer of every such bank must furnish a verified statement to the assessor showing the amount and number of shares of the capital stock of each bank, the amount of its surplus or reserve fund or undivided profits, the amount of investments in real estate, which real estate must be assessed to said bank and taxed as other real estate, and the names and places of residence of its stockholders, together with the number of shares held by each.

"Sec. 5868.   In the assessment of the shares of stock mentioned in the next preceding section, each stockholder must be allowed all the deductions and exemptions allowed by law in assessing the value of other taxable personal property owned by individual citizens of this state, and the assessment and taxation must not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this state.

"Sec. 5869.   In making such assessment, there must also be deducted from the value of such shares such sum as is in the same proportion to such value as the assessed value of the real estate of such bank or banking association in which such shares are held bears to the whole amount of the capital stock, surplus, reserve, and undivided profits of such bank or banking association."

In support of the demurrer to the complaint, counsel for the clearing house argue:   (1) "The stock in a corporation only represents the shareholders' interest in the corporate property.   For this reason statutes in general terms exempt-

ing from taxation such stock have been usually held to exempt the corporate property, unless the contrary intention is evidenced by the statute." (2) "Again, the equality of burden demanded by the Constitution is, in the absence of some express limitation imposed by it, not violated by the selection by the Legislature of special classes of property on which to impose taxes, leaving other classes untaxed, but is violated if there be a distinction between property of the same class." (3) That the legislative construction of section 3 of article 13 of the Constitution is found in Comp. Laws Utah 1917, section 5869. (4) That the contemporaneous legislative construction is entitled to great weight in construing section 2 of article 13 of our state Constitution. And counsel who appears both for the defendant and the clearing house presents for our consideration these additional propositions: (a) "The shares of a bank holding its property entirely within the state of Utah are by the Constitution exempted from taxation." (b) "If the section in question is unconstitutional then the entire statute directing taxation of bank stock must fail, as the deduction for real estate prescribed in the section is a necessary and vital element in the assessment and taxation of bank stock." (c) The provision for deduction is not an invasion of the uniformity and equality clause. It represents a rule designed to secure equal and uniform assessment and to bring about a just valuation of bank shares for purposes of taxation.

Instead of treating the above propositions seriatim we shall consider them in a general way and without regard to the order in which they have been stated.

Counsel call our attention to the well-established principle that every doubt as to the constitutionality of a statute must first be resolved in favor of its validity, and that before a statute can be declared invalid the repugnancy between the statute and the Constitution must be entirely clear. Such has always been the position of this court. *Rio Grande Lumber Co.* v. *Darke,* supra. Every presumption is in favor of the constitutionality of a statute, and in case of a doubt the statute must be held to be valid. The

Prayer for Mandamus.   Writ issued

mandate of the Constitution is that the Legislature shall pro-
vide by law for a uniform and equal rate of assessment and
taxation on all property in this state according to its
value in money, and the Legislature is commanded to       **12**
prescribe by general law such regulation as shall se-
cure a just valuation of all property, so that every person
shall pay a tax in proportion to the value of his property.
When the property of a corporation has been taxed its stock
is nontaxable.   Without question the Legislature has the
constitutional power to classify different kinds of prop-
erty for the purpose of taxation.   In some jurisdictions it
is provided by the Constitution that taxes shall be uniform
upon the same class of subjects.   Under such provisions sub-
jects of taxation of one class may be taxed at a different rate
from those of another class.   26 R. C. L. p. 243; 3 Michie;
Banks and Banking, section 325 (2b).   The power of classifi-
cation is not precluded by a constitutional provision that
taxation be equal and uniform, but the fact that a
statute makes no distinction between those in a class       **13**
does not of itself justify special exemptions, additional
deductions, or lower rates to those within a particular class
unless the Constitution provides that taxation shall be uni-
form "upon the same class of subjects."   Comp. Laws Utah
1917, section 5869, was borrowed from Montana.   The Utah
Legislature, however, in adopting this section from the stat-
utes of Montana, inserted the words "surplus, reserve, and
undivided profits" between the words "stock" and "of such
bank," etc.   See section 2504, Rev. Codes Mont. 1907.   The
validity of the section referred to has never been passed upon
by the Supreme Court of Montana.   In 1919 the Legislature
of Montana provided for the classification of taxable prop-
erty, and divided it into seven classes.   Class 1, being the
net proceeds of mines, is to be assessed at 100 per cent. of
its true value.   Class 2, consisting of household furniture
and other personal property, is to be assessed at 20 per cent.
of its true value; and as to other classes of property the
percentages of their true value for taxation purposes are
placed at 33⅓, 30, 7, and 40, respectively, banks being in

class 6, which provides that 40 per cent. of the value of the property in that class shall be taken as the basis of taxation. This section provides one system for assessing the property of national banks and another for assessing the moneyed capital employed in any other bank. National bank stock is assessed at its market value, the full value of the real estate being deducted. This legislation was held constitutional and valid in *Hilger* v. *Moore* (Mont.) 182 Pac. 477, in an exhaustive and well-considered opinion. But the Constitution of Montana contains an important clause that the Constitution of this state does not contain. Section 11 of article 12 of the Montana Constitution provides: "Taxes shall be levied and collected by general laws and for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Were a similar provision in the Utah Constitution, we should without hesitation uphold section 5869 as a valid act of classification. Many courts have upheld as valid and not repugnant to the Constitution similar statutory provisions, but an examination of the constitutional provisions upon which these decisions are based will, we think, disclose that they are invariably based upon a constitutional provision similar to that above quoted from the Montana Constitution. Our section 5869 operates with uniformity upon a class, but the difficulty of reconciling it with the Constitution of this state is that it is a special privilege, an added benefit, to one class which is accorded to no other. The section under consideration plainly gives to bank stockholders a deduction given to no other class of taxpayers. After provision is made for taxing bank stock, section 5869 says that in making such assessment there must *also* be deducted an *additional* sum to be ascertained in the manner therein provided. This is an exception or deduction not accorded to other classes or groups of taxpayers, and is, therefore, beyond any question of doubt, repugnant to the Constitution, which provides for uniformity of taxation. Not only do we find no warrant in the Constitution that permits the deduction made by the Legislature, but, in our opinion,

the deduction is prohibited by the Constitution. Suppose the Legislature had enacted a law putting farmers in a separate class for purposes of taxation, and had given them a flat 20 per cent. reduction in the assessment of their property. Would any one question the invalidity of such a law? It would be rank and indefensible class legislation that could not possibly be harmonized with the Constitution.

It is contended that bank stock is not taxable for the reason that "the Legislature and the taxing officials are under a constitutional mandate to tax all property of every person and every corporation within the state," and that, their stock being not assessable after the property of the corporation has been taxed, there is a difference between bank stock and that of any other corporation. However plausible this argument may seem, it is nevertheless, true that even the Constitution cannot validly prescribe any taxation of national bank property except upon the real estate of the bank and the shares of stock. When in conflict with federal law, the state Constitution and the state laws must yield. The national banking act limits the powers of the state with respect to taxation of national banks, "and the only taxes contemplated thereby are taxes on shares of stock in, and real estate of, such banks." 7 Fletcher, Cyc. Corps., section 4593. Nor can a state tax the personal property of such a bank. Id. p. 8041. *First National Bank of Billings* v. *Province,* 20 Mont. 375, 51 Pac. 821. "The statute, however, does permit a state to tax the real property of a national bank, but only 'to the same extent, according to its value, as other real property is taxed.'" Id. p. 8042. The Legislature has therefore provided for the taxation of banks in a manner that harmonizes with the National Banking Act in so far as no tax is imposed except upon real estate and the shares of stock. In order to avoid double taxation, the value of the real estate is deducted from the full cash value of the stock, which is assessed to the stockholders. Thus far the statute complies with the National Banking Act, and does not offend against the Constitution of the state.

But, as shown hereinbefore, section 5869, supra, provides

for an additional deduction wholly unauthorized by the Constitution. It is discriminatory in favor of banks as a class who in the past may have escaped their full, just, and constitutional measure of taxation. In several of the briefs it is urged that contemporaneous administrative and legislative construction of section 5869 should be accorded great weight. In case of doubt or ambiguity, either in a Constitution or a statute, such construction is frequently controlling. That doctrine has been announced by this court in the recent case of *State Board of Land Comm'rs* v. *Ririe*, 56 Utah 213, 190 Pac. 59. But where, there is no doubt, where the repugnancy to the Constitution is apparent, where there is a deduction or exemption from taxation without express authorization by the Constitution, the legislative act cannot be validated by invoking legislative construction. Whether assessors have or have not in the past obeyed the law cannot give validity to that which is clearly invalid. As a matter of fact, assessors in this state in the past, due undoubtedly to the difficulty of interpreting the cumbersome provision giving banks or bank stock owners an additional deduction from taxation, have often arbitrarily made such deductions as to them seemed fair and equitable. It is shown by the statement of facts in *McCornick & Co.* v. *Bassett*, 49 Utah, 444, 164 Pac. 852, that in assessing the stock of McCornick & Co., bankers, a corporation, in 1913, the assessor first ascertained the total valuation of the capital stock, surplus, and undivided profits, then deducted the value of the real estate, and "the assessor then reduced this sum 20 per cent.—a reduction which, the record shows, was made by assessors generally in arriving at the value of the capital stock of banks throughout the state for the purpose of taxation."

It has been suggested that it is "a serious question as to the effect of the remainder of this statute of the claimed invalidity of such an integral part." Without section 5869, supra, the statute provides for a complete method of taxation of banks, and it is this: The real estate is assessed at its full cash value; the stock is assessed at its full cash value,

and from the assessed value of the stock the value, or what is the same thing, the assessed value of the real estate, is subtracted, and the remainder is the amount of the assessment of all the stock. The statute is thus not endangered. The result is the elimination of the part that is clearly repugnant to the Constitution, and that which remains is not impaired.

In *Allen* v. *Louisiana*, 103 U. S. 80, 26 L. Ed. 318, it was held to be an elementary principle "that the same statute may be in part constitutional and in part unconstitutional, and that if the parts are wholly independent of each other, that which is constitutional may stand, while that which is unconstitutional will be rejected." In that opinion it was further said that "the point to be determined in all such cases is whether the unconstitutional provisions are so connected with the general scope of the law as to make it impossible, if they are stricken out, to give effect to what appears to have been the intent of the Legislature."

The Constitution of Arkansas of 1874 (article 16, section 5) provided that all property subject to taxation should be taxed according to its value, to be ascertained in such manner as the General Assembly might direct, making the same equal and uniform throughout the state, and that no one species of property from which a tax may be collected should be taxed higher than another species of property of equal value. The Constitution of the state further declared that all laws exempting property from taxation, other than as provided in that instrument, should be void. No part of the property of railroad companies was exempted by the Constitution from taxation. A subsequent statute provided for the taxation of the property of railroad companies, excepting, however, from the schedule of property required to be returned, "embankments, turnouts, cuts, ties, trestles, or bridges." In *Huntington* v. *Worthen,* 120 U. S. 97, 7 Sup. Ct. 469, 30 L. Ed. 588, it was held that the exemption of these items of railroad property was invalid, and the question arose whether the statute could be enforced. The court said:

"The unconstitutional part of the statute was separable from

the remainder. The statute declared that, in making its statement of the value of its property, the railroad company should omit certain items; that clause being held invalid, the rest remained unaffected, and could be fully carried out. An exemption, which was invalid, was alone taken from it. It is only when different clauses of an act are so dependent upon each other that it is evident the Legislature would not have enacted one of them without the other—as when the two things provided are necessary parts of one system—that the whole act will fall with the invalidity of one clause. When there is no such connection and dependency, the act will stand, though different parts of it are rejected."

See, also, *Northwestern Mut. Life Ins. Co.* v. *Lewis and Clark County,* 28 Mont. 484, 72 Pac. 982, 98 Am. St. Rep. 572.

Other questions discussed by counsel we do not deem of sufficient gravity to require notice.

The demurrer is overruled. A peremptory writ of mandate will issue commanding the defendant to place on the assessment rolls of Salt Lake county all title retaining notes or contracts that were owned by taxpayers in Salt Lake county at noon of January 1, 1920, unless the property for which the note is given is also assessed to him; that he assess all leases that were assignable and transferable without permission or consent of the lessors, that have a cash value, and that were owned by such taxpayers at noon of January 1, 1920; all conditional sales contracts in which the purchaser in writing agrees to pay the amount due and that were owned by the taxpayers at noon of January 1, 1920; all real estate contracts in which the buyer is obligated to pay the purchase price, and which contracts were owned by taxpayers of Salt Lake county at said time. No option contracts in which the purchaser does not agree that he will pay the purchase price shall be taxable. All the instruments enumerated above shall be assessed unless they are not solvent credits, as these words have been heretofore defined herein. The assessor will be further commanded in such peremptory writ of mandate to correct the assessment of all bank stocks by eliminating all deductions except those made by him for the cash value of the real estate owned by such banks in this state.

CORFMAN, C. J., and GIDEON and THURMAN, JJ., concur.

FRICK, J.  I concur.  I think the Constitution as well as the statute manifestly intends that property of all kinds shall be assessed at its cash value.  Title retaining notes manifestly come within the definition of property as defined by our statute, and are therefore taxable.  Moreover, they possess all the attributes of property.  The owner may assign, sell, pledge, or discount them and realize their face or actual value, and, if stolen, converted, or destroyed by another, he may recover their value precisely as he may for any other property.  If the assessors will follow the law (and if they do not they can be compelled to do so), no one will be taxed for any property unless he is the owner thereof at noon on the 1st day of January.  That is the precise point of time when ownership must exist in order to tax property to a particular owner.  This is true of all property except such as is obtained upon consignment or such as has escaped taxation, which must be assessed as provided by the statute.  If an article is sold, and a title retaining note is given in settlement, then if both were assessed to the same person the claim of double taxation might come within the rule laid down in *McCornick & Co.* v. *Bassett,* 49 Utah, 444, 164 Pac. 852.  As pointed out, however, by Mr. Justice WEBER, that situation does not arise.  If the owner has parted with the property before the 1st day of January, and has its value in money, the money, under our statute, may be taxed; and the same is true if he holds a title retaining note or any other note in which he is promised payment for the amount due, if such note constitutes a solvent credit.  Upon the other hand, if any person acquires property of any value after the 1st day of January he cannot legally be taxed on that property for the current year.  What is true respecting title retaining notes is likewise true respecting leases and the other contracts referred to by Mr. Justice WEBER.

With respect to the taxation of bank stocks, the Constitution leaves no room for doubt and hence no room for con-

struction. Bank stocks must be assessed at their cash value after deducting the value of the real estate, if any is owned by the bank. That is the plain, the unmistakable, purport of our Constitution. How can this court evade it? If bank stocks are assessed at too high or too low a valuation, the fault lies not with the law, but with those whose duty it is to administer it.

I can see no escape from the conclusions reached by my associate Mr. Justice WEBER; hence I concur.